COMMONWEALTH *vs.* VINCENT DELLE CHIAIE.

Essex.    October 4, 1948. — February 3, 1949.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & WILLIAMS, JJ.

*Homicide. Intoxication. Jury and Jurors. Practice, Criminal,* New trial.

At the trial of an indictment for murder of a girl seven years of age, where there was evidence of a killing during an attempt at rape and evidence describing the defendant as in various degrees of intoxication, the judge correctly charged the jury in substance as follows: "Voluntary intoxication is never an excuse or a palliation for crime. . . . One may be perfectly unconscious of what he is doing and yet be responsible for his conduct during drunkenness. . . . Drunkenness is no excuse for killing another while engaged in the act of attempting to rape her. . . . No matter how drunk one may be and no matter what the intention may be, the law does not permit drunkenness under such circumstances to be an excuse for the crime."

The mere fact, that after a trial of an indictment and a verdict of guilty the defendant discovered that the foreman of the jury was disqualified for jury service because of his residence in another State, did not as a matter of law require the allowance of a motion for a new trial based on that ground; disposition of the motion was within the discretion of the trial judge.

INDICTMENT, found and returned on September 10, 1947.

The case was tried before *Pinanski,* J.

*C. J. Mahoney,* for the defendant.

*J. J. Ryan, Jr.,* Assistant District Attorney, (*A. P. Pettoruto,* Assistant District Attorney, with him,) for the Commonwealth.

WILLIAMS, J. On November 20, 1947, the jury returned a verdict of guilty of murder in the first degree on an indictment charging the defendant with the murder of Louise Kurpiel at Lawrence on September 7, 1947. After the imposition of sentence, the defendant appealed to this court, his appeal being accompanied by an assignment of errors, a summary of the record, and a transcript of the evidence, as required by G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended by St. 1939, c. 341. There was little dispute as to the facts.

The Commonwealth presented evidence that the dead body of Louise Kurpiel, a child seven years old, was discovered near the municipal parking area in Lawrence in the early morning of Monday, September 8, 1947. The body was on its back, nude from the armpits down. The "panties" of the child were nearby. The left side of the face and head was "bashed in." Near the body was a rock with blood and hair on it. There were abrasions on the inner thighs between the vulva and the rectum, but no injury to the genitalia. The cause of death was "multiple crushed and lacerated wounds of the left side of the face, comminuted fractures of the bones of the left face, and . . . extensive injury and laceration of the brain." The defendant was seen walking with the child, holding her by the hand, near the municipal parking area on the preceding Sunday evening shortly after seven-thirty o'clock. About 8:25 P.M. on the same evening he was seen, covered with blood, near the place where the body was found. Later that evening he went to his home, left his bloodstained clothes in a closet and, wearing different clothes, "hitchhiked" to Franklin, New Hampshire. On Tuesday he was arrested. In an oral confession made to the district attorney, which was reduced to writing, and read and signed by him, he stated that he took the child to the parking area, attempted to have intercourse with her, and when she resisted and started to scream, he picked up a rock and hit her on the head several times.

In his testimony the defendant, a man of twenty-one, made no denial of the fact of being in the company of the child but stated that his mind was a blank as to what had occurred; that he had been to a wedding that Sunday afternoon; that he consumed about nine beers and two glasses of wine; that he remembered meeting a little girl, and thereafter remembered nothing. Witnesses who saw the defendant at the wedding testified variously that he was "very drunk," "feeling pretty good," and "almost drunk."

Of the fifteen assignments of error filed by the defendant only those numbered 13 and 15 have been argued.

Assignment 13 relates to the charge of the judge in reference to the effect of drunkenness on the legal responsibility of the defendant for his acts. The judge instructed the jury: "Voluntary intoxication is never an excuse or a palliation for crime. It would be subversive of all law and morality if the commission of one vice, may we call it a vice like drunkenness, or crime as it is under our statute here, should be allowed to excuse another crime. One may be perfectly unconscious of what he is doing and yet be responsible for his conduct during drunkenness. . . . Drunkenness is no excuse for killing another while engaged in the act of attempting to rape her. Drunkenness is no excuse for attempting to rape a girl and killing her in the act of that attempt. No matter how drunk one may be and no matter what the intention may be, the law does not permit drunkenness under such circumstances to be an excuse for the crime. . . . On the question of murder in the first degree deliberately premeditated, apart and distinct from murder committed during an attempt to rape, if you are satisfied upon the evidence that the defendant killed the deceased but that he was incapable of conceiving a deliberately premeditated intention to kill because of intoxication, then he is not guilty of murder in the first degree, but he is guilty of murder in the second degree. That is because deliberate premeditation is required there, and if a man is so overcome by liquor that he is incapable of deliberately premeditating, then the law says, out of kindness to him in that situation, that he is not guilty of murder in the first degree but he is guilty of

murder in the second degree." At the conclusion of the charge, the defendant objected "to that portion . . . that if drunkenness is so complete the defendant did not know at all what he was doing, he wasn't conscious of his act." The judge's charge was a correct and accurate statement of the law. *Commonwealth* v. *Taylor*, 263 Mass. 356, 363, in which case *Commonwealth* v. *Hawkins*, 3 Gray, 463, *Commonwealth* v. *Gleason*, 262 Mass. 185, and *Commonwealth* v. *Parsons*, 195 Mass. 560, were cited and considered. The facts in the *Taylor* case and in the instant case were similar. In each case there was evidence of an attempt to commit rape and a brutal killing in connection with such attempt. The law must be considered settled by the *Taylor* case and the cases therein cited.

Assignment 15 relates to the denial of a motion for a new trial based on the alleged disqualification of the foreman of the jury to serve as a juror because of his residence in New Hampshire, a fact alleged to have been discovered after the trial. The motion for a new trial was denied. On the issue raised by the motion the leading case is *Commonwealth* v. *Wong Chung*, 186 Mass. 231, an opinion written by Knowlton, C. J., in which he refers to the opinion in *Wassum* v. *Feeney*, 121 Mass. 93, written by Chief Justice Gray, who said at page 236, "When a party has had an opportunity of challenge, no disqualification of a juror entitles him to a new trial after verdict." Chief Justice Knowlton added at pages 237–238, "In many cases the failure of a party to ascertain a disqualification before the verdict is treated as a waiver of his rights in this respect. In particular cases this view is often correct and sufficient. But we are of opinion that the rule rests upon a foundation that is broader. . . . If, notwithstanding the efforts of public officers to perform their duties, and such efforts as the parties choose to make for the protection of their rights in regard to qualifications of jurors, it is discovered after a verdict that a disqualified person has joined in the decision, the interests of justice require that the irregularity or accident shall be treated like other irregularities. . . . If in the opinion of the presiding judge, the disqualification of a juror has

operated injuriously, and has tended to the return of an erroneous verdict, or has otherwise worked injustice, a new trial should be granted. A motion for a new trial for such a cause, like motions for new trials generally, should be addressed to the discretion of the court. It would be most unfortunate if, for an accidental error or omission hardly more than technical, it should be necessary to set aside a correct verdict on the motion of the defeated party, and to deprive the other of his rights obtained at great cost, and to expose him to the risks which attend postponement." *Manning* v. *Boston Elevated Railway*, 187 Mass. 496, 499. *Gray* v. *Boston Elevated Railway*, 215 Mass. 143, 149. *Liermann* v. *Caradonna*, 293 Mass. 90.

The judge could have found, as contended by the defendant, that the juror had in fact resided in New Hampshire since April, 1947, but we need not consider whether this fact disqualified him for jury service at the time of the trial. Assuming, without deciding, that he was so disqualified under the provisions of G. L. (Ter. Ed.) c. 234, § 1, and G. L. (Ter. Ed.) c. 51, § 1, the judge was warranted in finding that the presence of the disqualified juror on the panel did not affect the defendant injuriously, did not tend to the return of an erroneous verdict, and did not otherwise work an injustice. There was no error in the denial of the motion for a new trial.

The remaining assignments of error have not been argued and are considered waived.

There was evidence in the case sufficient to warrant a verdict of murder in the first degree committed with deliberately premeditated malice aforethought, committed in the attempted commission of a crime punishable with imprisonment for life, and committed with extreme atrocity and cruelty. In accordance with the mandate of G. L. (Ter. Ed.) c. 278, § 33E, we have considered the law and evidence in the case, together with the assignments of error including those waived, and are satisfied that no reason exists for requiring a new trial.

*Judgment affirmed.*