COMMONWEALTH vs. PAUL L. FRANCIS.

Suffolk. February 6, 1978. — May 10, 1978.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Constitutional Law*, Self-incrimination. *Witness*, Self-incrimination.

A witness at a criminal trial properly invoked his Fifth Amendment
   privilege against self-incrimination even though he had previously
   pleaded guilty to the same offense for which the defendant was being
   tried where his answers to questions posed by the defense counsel could
   have incriminated him in other separate offenses, and he did not waive
   his Fifth Amendment rights by answering some questions where those
   answers were already implicit in his guilty plea. [214-217]

INDICTMENT found and returned in the Superior Court on
May 14, 1976.

The case was tried before *Tamburello, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Stephen Hrones* for the defendant.

*Stephen M. Needle*, Assistant District Attorney, for the
Commonwealth.

HENNESSEY, C.J. On May 14, 1976, a grand jury for the
county of Suffolk indicted the defendant Paul L. Francis
and one George A. Sarro, Jr., for the crime of breaking and
entering in the nighttime with intent to commit a felony, to
wit, larceny. Sarro pleaded guilty to the offense and re-
ceived a sentence of nine to twelve years at the Massachu-
setts Correctional Institution at Walpole. The defendant

pleaded not guilty, and so proceeded to trial. At trial, the defense called Sarro as its only witness. As to the majority of questions posed by the defense, however, Sarro invoked his Fifth Amendment privilege against self-incrimination. The jury found the defendant guilty and the judge sentenced him to a six-year term at the Massachusetts Correctional Institution at Concord.

The defendant appeals pursuant to G. L. c. 278, §§ 33A-33G, claiming that, by sustaining Sarro's refusal to testify on Fifth Amendment grounds, the judge deprived him of a fair trial. We transferred the case here on our own motion. For the reasons discussed below, we affirm.

The pertinent facts are as follows. In the early morning hours of April 14, 1976, an alarm sounded in the home of one John Hagerty, manager of the F. W. Woolworth Co. store (Woolworth) in East Boston. Because the alarm indicated that there might be an intruder in the store, Hagerty went to the police and accompanied two officers to the Woolworth store premises.

When Hagerty and the police officers entered the front door of the store, they observed the aftermath of a break-in. Cases of merchandise had been broken open and were strewn about the store. Toward the rear of the store, a hole measuring approximately six feet in width had been made in the ceiling, and a ladder and rope had been extended through the hole to the floor. Merchandise had been piled into baskets and placed at the base of the ladder. Near these baskets Hagerty also discovered a large, partially melted candle which was not Woolworth merchandise. He observed melted wax near the broken cases of merchandise and at various other locations in the store.

While the officers made a call for additional police assistance, Hagerty observed two individuals escaping from the Woolworth roof by sliding down from the roof of an adjacent store. Police officers en route to the scene also observed two men in the vicinity of the store, one of whom was pulling white tags from a green hooded jacket worn by the

other. When these officers learned of Hagerty's observations, they returned to the street to try to find the men.

A short time later the officers arrested two individuals subsequently identified as Francis and Sarro. At the time of the arrest, Francis, the defendant, wore a green hooded jacket which Hagerty identified as Woolworth merchandise. On the jackets of both men, the police observed melted wax, which, according to the testimony of a senior criminalist with the Boston police crime laboratory, had a common origin with the wax in the candle discovered in the store.

At the trial, the defense sought to prove through Sarro's testimony that the defendant had not been with Sarro during the initial break-in, but had only joined the witness later, after Sarro discovered that he could not remove all the merchandise alone. It was the defendant's theory that, because he did not aid in the initial breaking, he was not guilty of the crime charged in the indictment.

Independent counsel advised Sarro that he could be charged with conspiracy if his involvement with Francis were established. Sarro thus answered questions concerning his own activity in the break-in, but declined to answer questions with regard to his method of operations, and refused to disclose whether or not the defendant accompanied him.[1]

In *Washington* v. *Texas*, 388 U.S. 14, 19 (1967), the United States Supreme Court stated that "[t]he right to offer the testimony of witnesses, . . . the right to present the defendant's version of the facts," "is in plain terms the right to present a defense . . . ." This right, embodied in the Sixth Amendment and applicable to the States by operation of the Fourteenth Amendment, has long been recognized as "an essential and fundamental requirement for the kind of fair

---

[1] The questions that Sarro chose not to answer are, in substance, as follows:

"And how did you break in?"
"What did you do once you got into the store?"
"When you first went in you were alone, weren't you?"

trial which is this country's constitutional goal." *Pointer* v. *Texas*, 380 U.S. 400, 405 (1965). See *Chambers* v. *Mississippi*, 410 U.S. 284, 294-295 (1973); *Washington* v. *Texas*, *supra.* As such, "its denial or significant diminution calls into question the ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined." *Chambers, supra* at 295.

Under these principles, rules which work arbitrarily to limit a defendant's ability to call witnesses, see *Washington* v. *Texas, supra* at 23, or which so restrict the scope of cross-examination that a defendant is precluded from impeaching the credibility of a prosecution witness, see *Davis* v. *Alaska*, 415 U.S. 308, 318 (1974); *Commonwealth* v. *Michel*, 367 Mass. 454, 459-460 (1975), have been found wanting. Similarly, the Supreme Court has invoked Sixth Amendment principles to overturn a conviction where a prosecution witness's refusal to answer on Fifth Amendment grounds has added critical weight to the prosecution's case in a form not subject to cross-examination. See *Douglas* v. *Alabama*, 380 U.S. 415, 419 (1965). Cf. *Namet* v. *United States*, 373 U.S. 179, 186-187 (1963).

Nevertheless, it is well established that "the right to confront and to cross-examine [witnesses] is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers* v. *Mississippi, supra* at 295. *United States* v. *Nobles*, 422 U.S. 225, 241 (1975). *Commonwealth* v. *Edgerly*, 372 Mass. 337, 343 (1977). *Commonwealth* v. *Turner*, 371 Mass. 803, 809 (1977). The Fifth Amendment privilege against self-incrimination, when properly invoked, is clearly one of those interests. See *Davis* v. *Alaska*, 415 U.S. 308, 320 (1974), quoting from *Alford* v. *United States*, 282 U.S. 687, 694 (1931); *Washington* v. *Texas*, 388 U.S. 14, 23 n.21 (1967); *United States* v. *Reese*, 561 F.2d 894, 899 (D.C. Cir. 1977); *United States* v. *LaRiche*, 549 F.2d 1088, 1096 (6th Cir.), cert. denied, 430 U.S. 987 (1977); *Roznovsky* v. *Estelle*, 546 F.2d 1185, 1187 (5th Cir. 1977); *United States* v. *Melchor Moreno*, 536 F.2d 1042, 1046 (5th Cir. 1976); *Royal* v.

*Maryland,* 529 F.2d 1280, 1283 (4th Cir. 1976); *United States* v. *Roberts,* 503 F.2d 598, 600 (9th Cir. 1974), cert. denied, 419 U.S. 1113 (1975); *United States* v. *Johnson,* 488 F.2d 1206, 1211 (1st Cir. 1973); *Myers* v. *Frye,* 401 F.2d 18, 20 (7th Cir. 1968). Therefore, we reject the defendant's contention that we should attempt to "balance" his rights under the Sixth Amendment against his witness's decision to invoke the Fifth Amendment. Rather, we examine the record only to determine the propriety of the witness's refusal to testify on Fifth Amendment grounds. We conclude that the witness properly invoked his Fifth Amendment privilege against self-incrimination.

Since the decision of *Malloy* v. *Hogan,* 378 U.S. 1 (1964), we have consistently applied Federal standards to determine whether a witness's claim of testimonial privilege is justified. *Taylor* v. *Commonwealth,* 369 Mass. 183, 187 (1975). *Gambale* v. *Commonwealth,* 355 Mass. 394, 396, cert. denied, 396 U.S. 881 (1969). *Murphy* v. *Commonwealth,* 354 Mass. 81, 83-84 (1968). *Commonwealth* v. *Baker,* 348 Mass. 60, 63 (1964). By these standards, a witness's refusal to testify on Fifth Amendment grounds must be upheld unless it is "'*perfectly clear,* from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency' to incriminate." *Malloy* v. *Hogan, supra* at 11-12, quoting from *Hoffman* v. *United States,* 341 U.S. 479, 488 (1951). *Taylor* v. *Commonwealth, supra.* The privilege thus afforded extends not only to "answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute . . . ." *Hoffman* v. *United States, supra* at 486.

Answering the questions posed by the defense could have incriminated the witness in two respects. First, under Massachusetts law, an indictment for conspiracy does not merge with the underlying substantive offense. G. L. c. 278, § 2A. Thus, notwithstanding the fact that Sarro had pleaded guilty to a breaking and entering charge, he might

have provided a substantial link in the chain of evidence needed to prosecute him for the separate offense of conspiracy had he been forced to testify to concerted action with the defendant. See *Commonwealth* v. *Smith,* 163 Mass. 411, 417 (1895).

Second, it must be remembered that when the two men were apprehended, the police found Woolworth merchandise on the defendant's person. Under G. L. c. 274, § 2, as appearing in St. 1973, c. 529, § 1, one who "aids in the commission of a felony . . . shall be punished in the manner provided for the punishment of the principal felon." Therefore, had Sarro testified to prior activity during the break-in, he could have exposed himself to a larceny charge in conjunction with such a charge against the defendant.

The defendant's argument that, as a practical matter, Sarro faced no danger because an additional sentence for conspiracy was unlikely, misconceives the applicable law. See *United States* v. *Johnson,* 488 F.2d 1206, 1209 n.2 (1st Cir. 1973). The "danger" the witness has a constitutional right to avoid by refusing to testify is that of self-incrimination, not merely a jail sentence. Cf. *Hoffman* v. *United States, supra* at 486-487. Surely a witness need not be forced to testify on the assumption of prosecutorial sympathy or laxity.

Having satisfied the applicable Federal standards, the witness's claim of privilege is subject only to the further condition that it be made in a timely manner. "It has long been the law in Massachusetts that if an ordinary witness . . . voluntarily testifies to a fact of an incriminating nature, he waives his privilege as to subsequent questions seeking related facts." *Taylor* v. *Commonwealth,* 369 Mass. 183, 189 (1975). It is the defendant's position that, once the witness chose to answer some basic questions about the break-in, he could not later invoke his Fifth Amendment rights and refuse to testify as to the "details." Cf. *Rogers* v. *United States,* 340 U.S. 367, 373 (1951).

It is true that if a witness "consents to testify to one matter tending to [in]criminate himself, he must testify fully in all

respects relative to that matter . . . ." *Evans* v. *O'Connor*, 174 Mass, 287, 291 (1899). However, by agreeing to testify with respect to one unlawful act, the witness "does not thereby waive his privilege of refusing to reveal other unlawful acts . . . ." *Id.* See *United States* v. *Pierce*, 561 F.2d 735, 738 (9th Cir. 1977); *United States* v. *Johnson*, 488 F.2d 1206, 1209-1210 (1st Cir. 1973).

The witness properly answered questions concerning his sole activity during the break-in. His plea of guilty to the charge of breaking and entering granted him immunity from further prosecution for the indicted offense. *Namet* v. *United States*, 373 U.S. 179 (1963). *United States* v. *Johnson*, 488 F.2d 1206 (1st Cir. 1973). Accordingly, statements concerning his own breaking and entering could not further incriminate him. By contrast, the witness consistently refused to answer questions calling for statements which could link him with the defendant.[2] As was discussed above, such statements would have been incriminatory with respect to the separate offenses of larceny and conspiracy. We thus conclude that the witness did not waive his Fifth Amendment rights when he answered certain questions about the break-in. By strictly confining his testimony to statements already implicit in his guilty plea, the witness preserved his testimonial privilege as to other criminal offenses.

*Judgment affirmed.*

---

[2] See note 1, *supra*.