COMMONWEALTH vs. EDWARD STARLING, JR.

Suffolk. November 4, 1980. — February 2, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Homicide. Practice, Criminal,* Instructions to jury. *Words,* "Malice aforethought."

At a murder trial, evidence that the defendant struck an infant a severe blow in the chest or abdomen, causing her death, warranted a finding that he acted with malice aforethought. [425-427]

At a murder trial, there was no error in that portion of a judge's charge which required for a finding of malice aforethought that the jury find that a reasonably prudent man, in the circumstances known to the defendant, would have known that according to common experience there was a probability of grievous bodily harm and a strong and plain likelihood of death as a result of the defendant's act. [427-429] KAPLAN, J., with whom WILKINS, J., joined, concurring but urging the creation and use of "pattern" instructions.

At a murder trial, there was no error in that portion of a judge's charge concerning causation in which he stated that the preexisting physical condition of the victim did not negate the defendant's liability. [429]

At a murder trial, the judge's charge with respect to manslaughter, taken in its entirety, was not in error. [429-430]

INDICTMENT found and returned in the Superior Court on April 13, 1976.

The case was tried before *Donahue*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Hugh W. Samson* for the defendant.

*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.

BRAUCHER, J. The defendant was convicted of murder in the second degree on an indictment charging murder (com-

prehending murder in the first degree) committed on May 24, 1974. In accordance with our opinion in *Commonwealth* v. *Davis,* 380 Mass. 1, 16-17 (1980), we transferred his appeal to this court on our own motion. He contends that his motion for a directed verdict on so much of the indictment as charges murder in the second degree should have been granted, and that we should exercise our powers under G. L. c. 278, § 33E, either to order a new trial or to direct the entry of a verdict of guilty of manslaughter. His principal argument, based on an elaborate historical analysis, is that "malice aforethought" requires proof that the defendant foresaw the potential for harm in his conduct. We affirm the conviction.

We summarize the evidence for the prosecution; no evidence was offered by the defendant. The victim was a baby girl, twenty-two months old, small for her age and suffering from eczema and "failure to thrive." The defendant had been living with the girl and her mother for about a month in an apartment in Dorchester. According to a neighbor, he was "very good with the baby" and got along well with the mother. For several hours on the night in question, after 10 P.M. and before 5 A.M., he was babysitting alone with the victim in their apartment. Early in the morning he knocked on the door of the next apartment, said there was something wrong with the baby, called the ambulance, and left to look for the mother. An ambulance came, and the attendant found the baby dead and called the police. They arrived after 5 A.M., and later the defendant and then the mother called on the telephone, were told to come home, and did so.

The defendant then told the police that the baby had fallen out of bed twice. The second time she was having trouble breathing, her eyes went back in her head, and she would fall asleep and then regain consciousness and start to choke. He turned her over, he said, and started to bang her back, to no avail. He tried the next apartment, but no one answered; he left to look for the mother, but did not find her. He returned with another man, found the baby appar-

ently dead, roused the next-door neighbor, and dialed 911, the emergency telephone number.

Later the same day a medical examiner performed an autopsy. He placed the most likely time of death as between 11 P.M. and 4 A.M. In his opinion death was caused by lacerations of the liver, with hemorrhage into the abdominal cavity, as a result of one or more "very severe" blows to the chest or abdomen with a blunt instrument such as a fist, a foot, or a board. The injuries were not consistent with a fall from a bed or table, or with banging on the back to quiet coughing or wheezing, even though the baby was suffering from "failure to thrive." Death would have occurred within a matter of seconds or minutes after the injury.

After hearing from the medical examiner, the police arrested the defendant that evening. The defendant appeared at a hearing in the Municipal Court of the Dorchester District the next day, May 25, 1974, and the case was continued to June 21, 1974. The defendant did not appear, and he was found in Newark, New Jersey, in January, 1976, living under an assumed name. He was arrested and returned to Massachusetts for trial.

At the close of the evidence, the judge allowed the defendant's motion for a directed verdict on so much of the indictment as charged murder in the first degree, but denied a similar motion with respect to murder in the second degree.

1. *Sufficiency of the evidence.* "Murder in the second degree is the unlawful killing of a human being with malice aforethought." *Commonwealth* v. *McGuirk,* 376 Mass. 338, 344 (1978) and cases cited, cert. denied, 439 U.S. 1120 (1979). The defendant concedes that the Commonwealth had a strong circumstantial case that he had in fact caused the victim's death. See *Commonwealth* v. *Mangum,* 357 Mass. 76, 85-86 (1970); *Commonwealth* v. *Belton,* 352 Mass. 263, 266-267, cert. denied, 389 U.S. 872 (1967). But, he argues, "There was no evidence from which the jury could have inferred that the defendant intended to injure the victim or foresaw that his striking her could seriously injure her." We think the evidence warranted the inferences

in question. We save until later in this opinion the question whether such an inference is essential to a finding of malice aforethought.

From the medical examiner's testimony the jury could infer that someone struck the baby a very severe blow in the chest or abdomen, causing her death. From the defendant's statements, coupled with the medical examiner's opinion as to time of death, the jury could infer that the defendant was the person who struck the blow. It would follow that the defendant's account to the police was deliberately incomplete, and his later flight tends to support that conclusion. We have said that "a simple blow with the hand administered to a healthy adult" will not support a finding of malice aforethought, since there is no "plain and strong likelihood that death will follow." *Commonwealth* v. *Mahnke,* 368 Mass. 662, 702-703 & n.48 (1975), and cases cited, cert. denied, 425 U.S. 959 (1976). "But the inference would be quite different if the same assault and battery were committed on an infant of tender years"; in such a case "a slight blow on the head of a new-born infant, which, if inflicted on an adult, would be harmless, but which necessarily would endanger the life and actually caused the death of the child, is proof upon which a jury might well find a party guilty of murder." *Commonwealth* v. *Fox,* 7 Gray 585, 588 (1856). Cf. *Commonwealth* v. *Hicks,* 356 Mass. 442, 445 (1969) (adult kicked in stomach). The jury could find that according to common experience there was a plain and strong likelihood that death would follow the defendant's blow, and could infer that he foresaw serious injury. The drawing of such an inference does not violate the rule of *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975). See *Commonwealth* v. *Greene,* 372 Mass. 517, 519 (1977).

The defendant's contrary argument rests to a substantial extent on assertions about the characteristics of "child-abusers." For example, he asserts, on the basis of "numerous psychiatric studies" and "common sense," that "few child-abusers foresee the potential for harm in their conduct." But there is no evidence in the record before us that the de-

fendant was a "child-abuser." He had been living with the victim and her mother only for one month; and despite numerous hospital visits occasioned by the victim's skin condition, there was no indication of abuse. In the principal psychiatric study relied on by the defendant, cases of direct murder were not included, since death of battered children because of repeated injuries "is still considered to be quite different from death due to a single, direct attack." Steele & Pollock, Psychiatric Study of Parents Who Abuse Infants and Small Children 89, 90, in R. Helfer & C. Kempe, eds., The Battered Child (2d ed. 1974). Moreover, in *Commonwealth* v. *Cadwell*, 374 Mass. 308, 316 (1978), where we took notice of such studies, a divided court reduced the verdict from first to second degree murder; we conceived that on the facts there disclosed there was "no question of reducing the verdict below murder."

2. *The jury instructions.* Defense counsel did not object or except to the judge's instructions or request additional instructions. Nevertheless, the defendant now asks us to review several aspects of the instructions pursuant to our powers under G. L. c. 278, § 33E. See *Commonwealth* v. *Gould*, 380 Mass. 672, 680 (1980). His arguments are afterthoughts; although we consider them despite the absence of exceptions, the absence of objection is not irrelevant. See *Commonwealth* v. *Fluker*, 377 Mass. 123, 131 (1979).

a. *Malice aforethought.* The judge based his charge on murder in the second degree, including his charge on "malice aforethought," on the charge approved by this court in *Commonwealth* v. *Madeiros*, 255 Mass. 304, 309, 315 (1926). The defendant now objects particularly to the portion of the charge that characterizes as "malicious" an intentional act, without legal justification, excuse or extenuation, using force on the body of another that "will probably do grievous bodily harm to that other and will create a strong and plain likelihood that that other will die as a result." The vice in this formulation, according to the defendant, is that it requires only that a reasonably prudent

man would have foreseen the risk of harm and does not require actual foresight by the defendant. Thus, he says, a permissible inference of "subjective malice," is converted to a "conclusive presumption" by watering the requirement down to "objective malice."

We agree with the defendant's analysis of what the charge as given required: that a reasonably prudent man, in the circumstances known to the defendant, would have known that according to common experience there was a probability of grievous bodily harm and a strong and plain likelihood of death as a result of the defendant's act. While we do not follow all of the defendant's historical analysis, we also agree that our early cases sometimes spoke in language of "presumption" that today might be vulnerable to constitutional attack. See *Commonwealth v. York*, 9 Met. 93, 103 (1845). But see *Commonwealth v. Pierce*, 138 Mass. 165, 178 (1884). At least since *Commonwealth v. Chance*, 174 Mass. 245, 252 (1899), however, we have avoided the use of "inference" or "presumption" in this connection. See *Commonwealth v. McInerney*, 373 Mass. 136, 141 & n.3 (1977), and cases cited. Malice aforethought simply does not require any actual intent to kill or to do grievous bodily harm, or any foresight of such consequences, if the jury thought them obvious in the circumstances known to the defendant. *Commonwealth v. Swift*, *ante* 78, 83 (1980), and cases cited. We are not inclined to revise our settled doctrine.

We have long recognized that "malice aforethought" is "a technical expression in the law, which has come down to us from past generations, and needs definition," a "very technical and somewhat misleading expression of the law." *Commonwealth v. Madeiros*, 255 Mass. 304, 309 (1926). The judge in the present case repeated to the jury the words quoted above, and explained the technical expression in traditional terms. Those terms probably convey the intended meaning imperfectly to the ordinary juror, and drastic simplification is doubtless desirable. See, e.g., Model Penal Code and Comments § 210.2 (1980); Proposed Criminal

Code of Massachusetts c. 265, § 3 (1972). Each of those proposals would redefine the elements of murder, eliminating the expression "malice aforethought." But that expression is embedded in our statutes. G. L. c. 265, § 1. G. L. c. 277, § 39. See *Commonwealth* v. *Desmarteau*, 16 Gray 1, 9 (1860). Modernization of jury instructions on the subject, however desirable, would savor of statutory revision, a Legislative prerogative.

b. *Physical condition of the victim.* The judge charged the jury in general terms that in a criminal case "the wrongdoer takes the victim as he or she finds him," and gave an example of a blow to a victim who had a heart condition. He then added that any weakened condition of the infant victim "does not assist the defendant in this case, unless, of course, that you find, as the defendant's counsel proposes, that there was some causal connection between the child's death and the condition" of the child. The judge was correct in stating that the preexisting physical condition of the victim did not negate the defendant's liability. See *Commonwealth* v. *Giacomazza*, 311 Mass. 456, 463 (1942); R. Perkins, Criminal Law 705-706 (2d ed. 1969). This part of the charge dealt with causation rather than malice, and the mental element of malice was adequately explained in another part of the charge. The judge was not required to refer to the unlikely hypothesis that the defendant was ignorant of the child's condition.

c. *Manslaughter.* There was no error in the judge's failure to instruct the jury on voluntary manslaughter, since there was no evidence of that crime. *Commonwealth* v. *Campbell*, 352 Mass. 387, 397 (1967).

As for involuntary manslaughter, the judge's charge was largely taken from *Commonwealth* v. *Welansky*, 316 Mass. 383, 398-399 (1944), emphasizing "wanton or reckless conduct." In distinguishing such conduct from "gross negligence or just carelessness," the judge used language which might be understood as requiring that the defendant actually foresee the risk of harm and possible death. The defendant now argues that the charge confused manslaughter and

murder, "at times seeming to require more of manslaughter than malice." At another point, however, the judge said that "even though a particular defendant is so stupid or heedless that in fact he did not realize the great danger, he can not escape the imputation of wanton or reckless conduct in his dangerous act if an ordinary, normal person under the same circumstances would have realized the gravity of the danger." Taken as a whole, we do not think the charge was in error.

After the jury had deliberated for about two hours, they requested "a clear definition on second-degree murder and manslaughter." The judge then gave supplementary instructions, repeating in substance the definitions he had given earlier and using illustrations involving reckless and intentional misuse of a motor vehicle. The defendant contends that the illustrations were confusing. The illustrations used may not have been very helpful, but we are unable to see that they were prejudicial to the defendant.

3. *Section 33E.* We have reviewed the case pursuant to G. L. c. 278, § 33E, and we decline to grant the defendant a new trial or to direct the entry of a verdict of a lesser degree of guilt than that found by the jury.

*Judgment affirmed.*

KAPLAN, J. (concurring, with whom Wilkins, J., joins). The judge's instructions on "malice aforethought" for murder in the second degree were minimally sufficient but not very informing. As the court indicates, instructions on this matter, even when more carefully devised, must remain obscure to the ordinary juror as long as they derive from the text of the present statute. It is a serious reproach to the administration of criminal justice in this Commonwealth that in the trial of a grievous offense with high penalty a jury may have to proceed under so feeble a light.

The beginning of a remedy would be to revise the statute. When that is attempted it will surely be seen that the entire

statutory statement on criminal homicide, from murder in the first degree through manslaughter, needs a redoing in which, among other things, the subjective/objective elements of the offenses may be more clearly defined. On its face the Model Penal Code does a far better job than our current statutes, and might well serve as the focus of study.

Correction of the statutes would itself have a tendency to improve the intelligibility of judges' charges. But I have become persuaded that if we aim at instructions that do more than clear the technical hurdles, instructions that bring a measure of real understanding to jurors, then we must provide the trial judges with "pattern" instructions carefully worked out, covering the basic definitions of the offenses. Without this help the system will continue to turn up instructions for which this court will be making rueful apology. In suggesting the creation and use of pattern instructions as indicated, I do no more than follow the American Bar Association's Standards for Criminal Justice, Trial by Jury, standard 15-3.6 (a)-(b):

"(a) Instructions to the jury should be not only technically correct but also expressed as simply as possible and delivered in such a way that they can be clearly understood by the jury.

"(b) A collection of accurate, impartial, and understandable pattern jury instructions should be available for use in criminal cases in each jurisdiction. Counsel and the court should nonetheless remain responsible for ensuring that the jury is adequately instructed as dictated by the needs of the individual case, and to that end should modify and supplement the pattern instructions whenever necessary."