COMMONWEALTH *vs.* JERRY A. DUNTON.

Worcester. December 3, 1985. — March 13, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Homicide. Malice. Practice, Criminal,* Instructions to jury.

The judge at a murder trial did not err in refusing to instruct the jury on involuntary manslaughter, where evidence that the victim died as a result of her head being smashed with great force into a concrete floor five or six times did not warrant such an instruction. [102-103]

At the trial of an indictment for first degree murder during which the judge, as a result of testimony by the defendant's expert that mental impairment affected the defendant's capacity to premeditate, instructed the jury pursuant to *Commonwealth* v. *Gould,* 380 Mass. 672 (1980), the defendant was not entitled to any further instructions on the effect of impairment of his mental processes on his degree of guilt, where the mental impairment he alleged would not have affected his capacity to form the specific intent to kill or to do grievous bodily harm. [103-104]

INDICTMENT found and returned in the Superior Court Department on May 14, 1981.

The case was tried before *Robert V. Mulkern,* J.

*Eric Brandt,* Committee for Public Counsel Services, for the defendant.

*Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. Convicted of the murder in the first degree of his pregnant wife, the defendant, Jerry A. Dunton, appeals. On appeal, the defendant asserts error in the denial of his request that the judge instruct the jurors on involuntary manslaughter. Pursuant to G. L. c. 278, § 33E (1984 ed.), he also asks that we direct the entry of a verdict of manslaughter because the judge did not instruct the jurors that they could consider evidence of mental impairment as bearing on malice aforethought. We affirm. We also conclude that we should not exercise our power under G. L. c. 278, § 33E, in favor of the defendant.

The facts are substantially undisputed. According to the defendant's statements, he pushed his pregnant wife down the cellar stairs of their home on the morning of April 16, 1981. He went to where she lay, raised her head as high as it would go and smashed it into the concrete floor half a dozen times until "the blood started flying." He then went to work. Consistent with his plan to act "normal" for the rest of the day, he followed the usual pattern of telling a coworker his plans for the evening; namely, that he was going to the store to get some milk and that he and his wife were planning to go to the Worcester Center to see an antique car show. He arrived home at about 4:45 P.M. and telephoned the police. He told the desk officer in a "calm" voice that he had discovered his wife at the foot of the stairs and that she might be dead.

A psychiatrist said that the defendant suffered from a mental impairment at the time of the incident. The psychiatrist opined that stress exacerbated the impairment and triggered the defendant's behavior.[1] The expert concluded that, although the defendant had the intent to kill his wife and the capacity to plan the crime to some degree, his mental impairment precluded him from weighing the "pros and cons" of the consequences of his conduct.

1. *Instruction on involuntary manslaughter.* The defendant originally requested instructions on both voluntary and involuntary manslaughter. The judge refused to give either instruction. On appeal the defendant claims that the judge erred in denying his request for an involuntary manslaughter instruction.[2] There

---

[1] There is no claim that the defendant lacked criminal responsibility. See *Commonwealth* v. *McHoul,* 352 Mass. 544 (1967). The evidence was that the defendant was criminally responsible.

[2] The defendant requested this instruction before the charge but did not raise the issue again after the charge. We agree with the defendant that this issue is preserved for appellate review because the judge told defense counsel that the defendant's rights were fully protected. On appeal, the defendant does not claim any error in the denial of his request for an instruction on voluntary manslaughter. Therefore, it is deemed waived. See Mass. R. A. P. 16 (a)(4), as amended, 367 Mass. 919 (1975). Pursuant to G. L. c. 278, § 33E, we have considered whether there was evidence which would support an instruction on voluntary manslaughter and conclude that there is no evidence which would warrant giving such an instruction.

was evidence that the defendant had told the police and his mother he did not mean to "do it" (i.e., kill his wife). The defendant asserts that his statement that he did not intend to kill his wife required an instruction on involuntary manslaughter. We do not agree.

Involuntary manslaughter is "an unlawful homicide, *unintentionally caused* . . . by an act which constitutes such a disregard of probable harmful consequences to another as to constitute wanton or reckless conduct" (emphasis supplied). *Commonwealth* v. *Campbell,* 352 Mass. 387, 397 (1967). "[M]alice in murder means knowledge of such circumstances that according to common experience there is a plain and strong likelihood that death will follow the contemplated act, coupled perhaps with an implied negation of any excuse or justification." *Id.* at 399. The record reveals that the victim died as a result of her head being smashed into a concrete floor five or six times with such force that her brain was dislodged from its natural position. That evidence does not warrant the jury in drawing an inference that smashing the victim's head into a concrete floor five or six times was unintentional. See *Commonwealth* v. *Anderson,* 396 Mass. 306, 314 (1985); *Commonwealth* v. *LeBlanc,* 373 Mass. 478, 491 (1977). There was no error in the judge's refusal to instruct the jurors on involuntary manslaughter.

2. *Relief pursuant to G. L. c. 278, § 33E.* The defendant urges us to adopt a rule of diminished capacity by requiring that jurors be instructed that mental impairment may bear on malice aforethought. He points out that the definition of malice includes (1) actual intent to kill, (2) intent to do grievous bodily harm, and (3) intent to do an act creating a plain and strong likelihood of death or grievous bodily harm, see *Commonwealth* v. *Puleio,* 394 Mass. 101, 108 (1985), and that mental impairment may bear on the specific intent needed on the first two aspects of malice. See *Commonwealth* v. *Henson,* 394 Mass. 584 (1985). The defendant asks us "to recognize that malice may be negated by the existence of mental impairment."

In no case have we recognized mental impairment as a ground for negating the element of malice in prosecutions for murder.

Further, this issue is not presented by the record. The defendant's expert clearly stated that the defendant could intend the crime, that he had the capacity to plan "how he might murder his wife and still try to cover his deeds, misdeeds," but that as to "premeditation proper . . . he was impaired by reason of his mental impairment." *Commonwealth* v. *Gould,* 380 Mass. 672, 683 (1980).[3] According to the defendant's expert, the impairment affected the defendant's capacity to premeditate, one of the factors distinguishing first from second degree murder. As a result, the judge instructed the jurors pursuant to *Commonwealth* v. *Gould, supra* at 683, 686 & n. 16. Because the impairment did not affect the defendant's capacity to form the specific intent to kill or to do grievous bodily harm, the defendant was not entitled to any further instructions on the effect of his mental impairment on the degree of guilt.

We have reviewed the record and conclude that there is no reason for us to order a new trial or to direct the entry of a verdict of a lesser degree of guilt.[4]

*Judgment affirmed.*

---

[3] In his instructions, the judge explicitly differentiated between the degrees of murder, the requisite intent necessary for each, and the effect of mental impairment on the elements needed for murder in the first degree on the basis of deliberate premeditation and extreme atrocity or cruelty. The defendant does not claim that the instructions were incorrect under Massachusetts law.

[4] The defendant filed a motion to suppress his statements to the police. The defendant's statements were the main evidence against him. The judge ruled the statements were voluntary and admissible. He also ruled that the defendant made a knowing and intelligent waiver of the rights protected by *Miranda* v. *Arizona,* 384 U.S. 436 (1966). On appeal, the propriety of these rulings has not been briefed or argued. We deem the defendant's failure to brief these issues as a waiver. An "appellate court need not pass upon questions or issues not argued in the brief." Mass. R. A. P. 16 (a)(4), 367 Mass. 919, 921 (1975). *Commonwealth* v. *Cundriff,* 382 Mass. 137, 150-151 n.22 (1980), cert. denied, 451 U.S. 973 (1981). The defendant's passing reference to consideration of the voluntariness of his statements is insufficient as an appellate argument. *Commonwealth* v. *Brown,* 394 Mass. 394, 398 (1985). Pursuant to G. L. c. 278, § 33E, we have considered whether the admission of the defendant's statements either was erroneous or whether it created a substantial risk of a miscarriage of justice. We conclude that there is no error and no substantial risk of a miscarriage of justice.