COMMONWEALTH vs. TERRY L. GREY.

Suffolk.  September 11, 1986. — March 19, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Homicide. Malice. Intent. Mental Impairment. Practice, Criminal,* Instructions to jury.

Where evidence at a murder trial, including expert psychiatric testimony, tended to show that the defendant, because of his mental condition, may not have formed a specific intent either to kill the victim or to inflict grievous bodily harm on him, and where a finding of this specific intent may have been the basis for the jury's conclusion that the defendant acted with malice, the judge's failure, after timely request, to instruct the jury that they should consider, on the issue of intent, the defendant's mental status at the time of the crime was error requiring reversal of the defendant's conviction. [471-474] HENNESSEY, C.J., concurring in part and dissenting in part, would have reversed on the ground that the judge's instructions to the jury, by impermissibly shifting the burden of proof as to some issues, created a substantial risk of a miscarriage of justice. [475-478]

INDICTMENT found and returned in the Superior Court Department on December 15, 1983.

The case was tried before *Sandra L. Hamlin,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Robert L. Sheketoff (John Palmer* with him) for the defendant.

*Laura Callahan,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant was indicted for murder in the first degree and convicted of murder in the second. He challenges the judge's refusal to instruct the jury that the defendant's mental impairment, if any, could be considered on all issues involving his specific intent to do certain things. The judge told the jury, over objection, that any mental impairment could

be considered only on the issue whether the defendant deliberately premeditated the victim's death. The judge's instruction was erroneous because it told the jury not to consider evidence of the defendant's mental condition in deciding whether the defendant intended to kill the victim or intended to inflict grievous bodily harm on him, both of which are bases for a finding of malice aforethought.

Evidence tending to show that, in the circumstances, a defendant in a murder case did not intend the victim's death or serious injury is relevant, but not dispositive, as to whether the killing was committed with malice.[1] The admission in evidence of the defendant's mental condition is appropriate because it bears on the question whether the crime of murder was committed at all. See *Commonwealth* v. *Gould,* 380 Mass. 672, 681-682 (1980); S. Morse, Undiminished Confusion in Diminished Capacity, 75 J. Crim. L. & Criminology 1, 6 (1984) (hereinafter, Morse).[2] Just as we permit evidence of a defendant's alleged intoxication to be considered when his specific intent to kill is in issue (*Commonwealth* v. *Henson,* 394 Mass. 584, 593 [1985]), we should permit the jury to con-

---

[1] Malice aforethought may be shown by proof that the defendant, without justification or excuse, intended to kill the victim or to do the victim grievous bodily harm. See *Commonwealth* v. *Puleio,* 394 Mass. 101, 108 (1985). However, proof of such an intent is not required because malice aforethought may be inferred if, in the circumstances known to the defendant, a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act. *Commonwealth* v. *Chance,* 174 Mass. 245, 252 (1899). See *Commonwealth* v. *Starling,* 382 Mass. 423, 428 (1981); *Commonwealth* v. *Swift,* 382 Mass. 78, 83 (1980).

[2] Consideration of the defendant's mental condition for this purpose has nothing to do with the defense of diminished capacity, perhaps better called partial responsibility (see Morse, *supra* at 20-21), a concept this court has rejected. *Commonwealth* v. *Johnson,* 374 Mass. 453, 462-465 (1978).

In *Commonwealth* v. *Gould, supra* at 683-686, we recognized that a defendant's mental illness and its effect should be considered by a jury in deciding whether a murder was committed with extreme atrocity or cruelty. Although Justice Quirico's thoughtful dissent could be read to suggest that the court accepted the defense of partial responsibility (*id.* at 691 [Quirico, J., concurring in part and dissenting in part]), both the court (*id.* at 685-686) and Justice Quirico (*id.* at 690) viewed the court's holding as slightly redefining the relevant elements of the crime of murder committed with extreme atrocity or cruelty.

sider evidence of mental impairment at the time of the crime in deciding whether the Commonwealth has proved the defendant's specific intent. Indeed, consideration of the effect of a mental impairment for which a defendant is not responsible seems at least as warranted as our present practice permitting consideration of the effects of the voluntary injection of drugs. See *United States* v. *Brawner,* 471 F.2d 969, 998-1001 (D.C. Cir. 1972); Morse, *supra* at 11-12. The exclusion of such evidence could raise a constitutional problem, because "[a]n absolute rule that bars consideration of relevant evidence bearing on a defendant's capacity to have a specific intent is, in any event, arbitrary." *Commonwealth* v. *Henson, supra* at 593. Morse, *supra* at 7.[3] We have suggested that, if a defendant's mental impairment affected his capacity to form the specific intent to kill or to do grievous bodily harm, the defendant would be entitled to an instruction on the effect of his impairment on the question of malice. See *Commonwealth* v. *Dunton,* 397 Mass. 101, 104 (1986).

We therefore conclude that the judge's failure on request to "instruct the jury, on the issue of intent, that they should consider the defendant's mental status on the day in question," requires reversal of the conviction if there was evidence tending to show that, because of his mental condition, the defendant may not have formed a specific intent to kill or to cause grievous

---

[3] The quoted statement in the *Henson* opinion concerning arbitrariness, in which the author of the dissent in this case concurred (see *Commonwealth* v. *Henson, supra* at 594 [Hennessey, C.J., concurring]), derives from the principle that, absent a strong State interest in ignoring such evidence, a rule which requires a jury to disregard evidence bearing directly on the defendant's guilt would be a violation of due process of law and the defendant's State and Federal constitutional right to present a defense. The author of the dissent in this case took careful and appropriate note of this principle in his opinion in *Commonwealth* v. *Francis,* 375 Mass. 211, 213-214, cert. denied, 439 U.S. 872 (1978), commenting that the right to offer the testimony of witnesses "has long been recognized as 'an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' *Pointer* v. *Texas,* 380 U.S. 400, 405 (1965). See *Chambers* v. *Mississippi,* 410 U.S. 284, 294-295 (1973); *Washington* v. *Texas,* [388 U.S. 14, 19 (1967)]." Thus, as the *Francis* opinion continues (*supra* at 214), "rules which work arbitrarily to limit a defendant's ability to call witnesses . . . have been found wanting."

bodily harm that could have warranted a finding of malice. We reach this conclusion because we do not know on what possible basis the jury concluded that the defendant killed the victim with malice, and thus we do not know that the failure to give the requested instruction was not prejudicial.[4]

We first outline the facts of the killing and then summarize the testimony of defense experts that was relevant to the defendant's state of mind when he stabbed the victim. In 1983, the defendant and the victim worked for a summer youth program cleaning Franklin Field in the Dorchester section of Boston. The teenagers working in the program had been concerned that someone, including persons within the group, might attempt

---

[4] We commented earlier that there is a largely but not a totally objective basis on which a jury may infer malice, thus making a defendant's specific intention to kill or to injure irrelevant. See n. 1 above. If in the circumstances known to the defendant a reasonably prudent person would have known of the plain and strong likelihood that death would follow a contemplated act, malice may be found without any actual intent to kill or to do grievous bodily harm and without any foresight by the defendant of such consequences. See *Commonwealth* v. *Starling,* 382 Mass. 423, 428 (1981).

This objective reasonable person test is applied to the circumstances the defendant knew (a subjective measure) (see *id.*) and not to what he reasonably should have known (an objective measure). See *Commonwealth* v. *Chance,* 174 Mass. 245, 252 (1899). It was, therefore, error (without careful explanation) for the judge to tell the jury that malice is determined by an objective standard. The judge made a similar error in telling the jury that involuntary manslaughter was determined by an objective standard. "The standard of wanton or reckless conduct is at once subjective and objective . . . ." *Commonwealth* v. *Welansky,* 316 Mass. 383, 398 (1944). It depends on what the defendant knew (subjective) and how a reasonable person would have acted (objective) knowing those facts. See *Commonwealth* v. *Godin,* 374 Mass. 120, 129-130 (1977), cert. denied, 436 U.S. 917 (1978).

Any thought that we should disregard the error in the instructions because the evidence plainly warranted a finding of malice on the largely objective basis we have just discussed has to be rejected. At certain points in defining murder the judge emphasized the importance of the defendant's intention. "For the crime of murder there must be a specific intent to murder . . . ." "In the case of murder, the required intent is a specific intent to kill with malice aforethought." This language was not limited to the definition of deliberately premeditated murder in the first degree. We do not view these errors as outweighed by portions of the charge in which the judge defined malice properly.

to steal their paychecks. On August 8, the defendant, who was then fifteen years old, brought to work a switchblade knife which he displayed, flicking the blade in and out. The jury could have found that the victim asked the defendant if he could see the knife. The defendant refused, saying that he thought the victim and his "boys" were going to take the defendant's paycheck. A discussion followed, leading to loud talk between the two. The defendant, who had continued to open and close the knife, put it in one of his pockets. When the victim started to back away from him, the defendant told him not to or he would stab him. When the victim moved a little farther away, the defendant drew the knife out of his pocket, snapped the blade open, and stabbed the victim in the chest.

The defendant did not deny the stabbing but testified that he was afraid of the youngsters around him and that, when the victim pushed him on the forehead, he took the knife out of his pocket. The victim then backed off, and the defendant put the knife away. The victim took a step toward the defendant. The defendant shoved the victim in the chest with his right hand. He knew he held the knife in that hand but did not know whether it was open or closed. The victim died of that single stab wound.

A psychiatrist, who had seen the defendant approximately two years before the killing and again after it, testified for the defendant. He said the defendant was of borderline retarded intelligence. If faced with a stressful situation he could not handle, he would try to get away but often emotion would overwhelm him and he would strike out aggressively and impulsively. On cross-examination, the psychiatrist added that the act of bringing out the knife and stabbing the victim was intentional conduct but that there could have been an "impulsive reflex element" because the defendant felt threatened and panicked.

Another psychiatrist testified that she interviewed the defendant after the killing and reviewed various reports. She said that the defendant had definite paranoid traits that hindered his emotions and could lead to impulsive acts of aggression ("sudden acts without thinking about it, maybe acting on the basis of

some subconscious feelings"). The stabbing, she said, could have been impulsive.

Although there was other evidence that would have warranted the conclusion that the defendant intentionally stabbed the victim in the chest intending to kill him or to cause him grievous bodily harm, the testimony of the defendant's experts concerning his mental state (and the possible cause of his reaction in the circumstances) tended to show that the defendant did not intend to kill or to harm the victim. The judge, however, declined to instruct the jury that the defendant's mental state at the time he stabbed the victim was relevant to questions of the defendant's intent. The defendant was entitled to an instruction that the jury could consider his mental condition whenever the Commonwealth had the burden of proving the defendant's specific intent to cause a particular result.

We do not say that mental abnormality, short of a lack of criminal responsibility, may excuse a defendant charged with murder in the second degree. There is no element of excuse in what we decide. We are concerned with the Commonwealth's proof of a specific intent, which in some instances (as here) could be and in other crimes (such as robbery, see *Commonwealth* v. *Sheehan,* 376 Mass. 765, 772 [1978]) is a part of the Commonwealth's proof of guilt.

The evidence here warranted a finding of guilty of murder in the second degree. Nothing we decide today eliminates the possibility that, at a second trial, such a verdict will again be returned. The evidence also required an instruction on manslaughter, a crime that has no element of specific intent. What we decide today thus has no bearing on the proof of manslaughter. The elements of these crimes have been established by judges applying the common law, not by the Legislature, which, of course, has the right to redefine those crimes.

*Judgment reversed.*

*Verdict set aside.*

HENNESSEY, C.J. (concurring in part and dissenting in part). I concur in the result reached by the court,[1] but I disagree with the court's reasoning. This court has several times disclaimed any intention of adopting in criminal cases the principle of partial responsibility or diminished capacity. See, e.g., *Commonwealth v. Sheehan,* 376 Mass. 765, 771-772 (1978); *Commonwealth v. McGuirk,* 376 Mass. 338, 345-346 (1978); *Commonwealth v. Johnson,* 374 Mass. 453, 461-465 (1978). Nevertheless, the reasoning of the court in this case applies that principle in practical effect. It does so by stating that murder in the second degree by reason of malice aforethought is a crime of specific intent. Then the court concludes that the jury should have been instructed that they should consider the evidence of the defendant's mental abnormality[2] on the issue whether the defendant was capable of entertaining the requisite intent. This is a new concept in the Massachusetts law of murder in the second degree and malice aforethought. Perhaps it is more important that I must conclude, based upon the reasoning of several of this court's recent decisions (discussed below), that a defendant's voluntary intoxication by use of illegal drugs or alcohol may now excuse him from conviction of murder in the second degree.

My concerns here do not implicate the court's many decisions relating to insanity, see, e.g., *Commonwealth v. Kostka,* 370 Mass. 516, 539, 540 (1976) (Hennessey, C.J., dissenting in part), which are based on the sound premise that we should not treat as criminals those persons who are not criminally responsible because of mental disease. Where insanity is in

---

[1] I concur in the result on grounds which the court did not have to reach by reason of the path it chose. I would grant a new trial on the basis that the judge in her charge impermissibly shifted to the defendant the burden of proof as to some issues. See *Commonwealth v. Nieves,* 394 Mass. 355 (1985). I would reach this result even though the standard of review (the defendant not having objected to these aspects of the charge) is "substantial risk of a miscarriage of justice." I would conclude, from a reading of the entire charge, that there was such a substantial risk.

[2] This evidence fell short of supporting a conclusion of insanity under *Commonwealth v. McHoul,* 352 Mass. 544 (1967). The defendant makes no argument that he was entitled to an instruction to the jury that they could decide he lacked criminal responsibility by reason of mental disease within the meaning of *McHoul.*

issue in a case, a dual test is applied: a person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either (1) to appreciate the wrongfulness of his conduct or (2) to conform his conduct to the requirements of law. *Commonwealth* v. *McHoul, supra.* My concern is that in recent decisions, and most especially in the instant case, the court has established the relevance of mental limitations of a defendant who lacks neither of the *McHoul* capacities. It is particularly disturbing that defendants may be excused as to certain crimes of violence by reason of their voluntary use of drugs or alcohol.

The court's reasoning in this and several similar cases has been rooted in the concept of "specific intent." For many decades the focus was confined to the issue whether the specific intent necessary for deliberate premeditation had been shown in a first degree murder prosecution. See, e.g., *Commonwealth* v. *Delle Chiaie,* 323 Mass. 615, 617-618 (1949); *Commonwealth* v. *Taylor,* 263 Mass. 356, 362-363 (1928). More recently the reasoning of these cases has been applied where the crime charged was assault with intent to murder. *Commonwealth* v. *Henson,* 394 Mass. 584, 592-594 (1985).[3]

The court in this case correctly states that malice aforethought may be inferred from proof (1) that the defendant without justification or excuse intended to kill the victim, (2) that the defendant intended to do the victim grievous bodily harm, or (3) that in the circumstances known to the defendant a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death or grievous harm would follow a contemplated act.

---

[3] In *Commonwealth* v. *Gould,* 380 Mass. 672 (1980), this court applied the principle of diminished responsibility or diminished capacity to the issue whether a murder was committed with extreme atrocity or cruelty, but the court there did not rely upon "specific intent" reasoning. "Whether it is desirable to introduce any version of diminished capacity as a mitigating factor to this crime as now defined by the statute is a question of legislative policy which I believe we should leave to the Legislature." *Id.* at 693 (Quirico, J., concurring in part and dissenting in part, with whom Hennessey, C.J., joined).

The court, as I read the opinion, equates the "intent to kill or to do the victim grievous bodily harm" part of this definition with the specific intent required in *Delle Chiaie, supra* (deliberate premeditation), and *Henson, supra* (assault with intent to murder).[4] The line between crimes of specific intent and crimes of general intent is surely not a precise one, and reasonable judges and attorneys may differ in the task of categorizing. " '[S]pecific intent' may not have clear meaning to all judges and all lawyers. I trust that it is clear that the language of the court here has no bearing on the great majority of crimes of violence, such as assault by means of a dangerous weapon and armed robbery." *Henson, supra* at 594 (Hennessey, C.J., concurring). I would have assumed, until now, that malice aforethought requires no such specific state of mind as to group it with *Delle Chiaie* (deliberate premeditation) or *Henson* (assault with intent to murder).

It is clear that the mental abnormality considered by the court to be relevant in such cases includes intoxication by voluntary use of drugs or alcohol. *Commonwealth* v. *Henson, supra* at 592-594. See *Commonwealth* v. *Perry,* 385 Mass. 639, 648-649 (1982).

I offer that the court has now established that mental impairment short of insanity, including voluntary intoxication, may excuse a defendant charged with murder in the second degree. This is an important policy decision and, because the approach hinges upon the nature of the intent, I suggest that the issue whether the requisite intent is general or specific is itself a

---

[4] As I read the court's opinion, specific intent does not relate to the third part of the definition, presumably because the legal test there is an objective one. However, the court reasons, the judge's charge was in error because there is no way of knowing whether the jury reached their verdict premised on the first or second parts of the definition (the subjective aspects) or on the third part (the objective aspect), or on all three premises. The difficulty with the court's reasoning, as I see it, is that the latter, objective part of the definition is necessarily established by proof of the former, subjective parts, of the definition. This is a sound reason for concluding that there was no error in the judge's refusal to charge as to the defendant's mental limitations. This aside, I emphasize that my principal concern here, as in *Henson,* is for the policy decisions inherent in the results reached by the court.

policy question. See Arenella, The Diminished Capacity and Diminished Responsibility Defenses: Two Children of a Doomed Marriage, 77 Colum. L. Rev. 827, 828 n.7 (1977). I disagree with the court's decision on that policy question and, as I did in *Henson, supra* at 594, I express concern that the court's reasoning may implicate other crimes. For instance, the court in its opinion states that robbery requires specific intent. From this must we now infer that, as to a defendant charged with robbery, evidence of his intoxication by the voluntary use of illegal drugs or alcohol is relevant? Compare *Commonwealth* v. *McGrath,* 358 Mass. 314, 320 (1970).

Finally, I think the impetus to adopt a principle of diminished capacity or diminished responsibility may come from a realization that various defendants charged with identical crimes may, from case to case, greatly differ as to the extent or degree of blameworthiness or culpability. This is a proper consideration in the sentencing function, and the temptation of the court to adjust the substantive law, as it has done in *Henson* and the instant case, may be particularly strong when there is inflexibility in sentencing provisions, such as in murder convictions. The cure lies not with the court, but with the Legislature, where sentencing laws are established. In *Gould, Henson,* and the instant case, the court has decided policy matters which, in the public interest, should be left to the Legislature for debate and decision.