## COMMONWEALTH *vs.* JOSE TEVENAL, JR.

Essex. October 5, 1987. — December 10, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Waiver. Evidence,* Admissions and confessions. *Homicide. Practice, Criminal,* Instructions to jury, Capital case. *Intoxication. Intent. Felony-Murder Rule.*

With regard to a sixteen year old defendant's motion to suppress as evidence in a murder case certain incriminating statements made to police officers on the ground that his apparent waiver of his Miranda rights was not voluntary because he was denied an opportunity to have a meaningful consultation with his mother or other interested adult, the judge, following a hearing, was warranted in finding beyond a reasonable doubt that the defendant and his mother understood his Miranda rights, that he had had an opportunity to consult with his mother, and that he had voluntarily waived his rights. [226-228]

At the trial of a first degree murder charge which was presented to the jury solely on the theory of felony-murder, with armed robbery as the underlying felony, in which the judge instructed the jury that they might consider all the evidence, including the defendant's intoxicated condition, in deciding the question of the defendant's specific intent to commit robbery, no substantial likelihood of a miscarriage of justice was created by the judge's not also instructing the jury that they might consider evidence of the defendant's intoxication on the question of the specific intent that is an element of murder where, because the felony of armed robbery is inherently dangerous to human life as matter of law, the fact of the defendant's intoxication was irrelevant to the question whether the felony was one warranting a conviction of murder in the first degree; moreover, where the jury had found on proper instructions that the defendant had a specific intent to steal, he was not denied due process by the judge's ruling, as matter of law, that a death in the course of an armed robbery could be murder in the first degree without independent and additional proof of malice. [228-231]

INDICTMENTS found and returned in the Superior Court Department on September 18, 1985.

A motion to suppress evidence was heard by *John T. Ronan,* J., and the cases were tried before *John L. Murphy, Jr.,* J.

*Thomas J. Barrett* for the defendant.

*Judith Fabricant,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant appeals from his convictions in February, 1986, of murder in the first degree, armed robbery, and carrying a firearm without authority (G. L. c. 269, § 10[a] [1986 ed.]). He challenges the denial of his motion to suppress incriminating statements he made to the police. He also challenges the judge's charge as it relates to his conviction of murder and seeks relief pursuant to G. L. c. 278, § 33E (1986 ed.). We affirm the convictions.

On February 2, 1985, the defendant, who was approximately three weeks short of his seventeenth birthday, met with several friends at an apartment in Lawrence. The defendant had a handgun. He and two friends agreed "to do a cab and get some money." After some delay, someone called a taxicab company and ordered a taxicab. A taxicab arrived. One of the two friends served as a lookout. The other entered the passenger side of the front seat of the taxicab and seized the ignition keys. The defendant approached the driver's side of the taxicab, pointed the gun at the driver, and demanded his money. The driver gave the defendant "a stack of ones." The defendant then shot the taxicab driver six times from close range. After the shooting, the defendant divided the money with his companions. He showed the empty gun to several people and admitted to at least six friends or acquaintances that he had shot the taxicab driver.

1. The defendant challenges the denial of his motion to suppress incriminating statements he made at the Lawrence police station two days after the victim was shot.[1] After a

---

[1] The defendant presents this argument as a claim of the denial of his Fifth Amendment right against self-incrimination because he did not effectively waive his Miranda rights. The evidence and findings that bear on his voluntary waiver of Miranda rights also bear on the separate but parallel question (see *Commonwealth* v. *Tavares,* 385 Mass. 140, 145, cert. denied, 457 U.S. 1137 [1982]), only indirectly argued here, whether the defendant's admissions and confession were voluntary.

hearing on the motion, the motion judge made careful findings of fact, warranted on the record, and denied the motion.

On February 4, 1986, the defendant came to the Lawrence police station voluntarily with a friend. He admitted to the shooting before the police asked him any questions. The police gave a Miranda card to the defendant, which he read before his mother, stepfather, and stepfather's grandson arrived at the station. The officers waited until his relatives were present before asking him any questions. The family group consulted in private in a room at the police station for about twenty minutes, after which warnings were read to the entire family group. In the defendant's presence, the stepfather's grandson translated those warnings into Spanish for the defendant's mother and stepfather. The group was left alone again for about ten minutes. The judge found that "[a]s the gravity of her son's plight began to [dawn] upon the mother, she started to become emotional." After the interrogating officer was told by the family interpreter that the defendant's mother understood her son's rights, she and the defendant signed Miranda cards, and the defendant agreed to make a statement. When the defendant admitted he had shot the taxicab driver, his mother left the room at the defendant's suggestion. The defendant signed a four-page confession which was admitted in evidence at the trial.

The suppression issue arises because the defendant's mother did not speak English and became upset as she came to understand the reason why the defendant was being held. The defendant, who concedes he has no problem understanding English, argues that his apparent waiver of his rights was not voluntary because he was denied an opportunity to have the meaningful consultation with a parent or other interested adult which should ordinarily be available to a juvenile over fourteen years of age in such circumstances. See *Commonwealth* v. *MacNeill,* 399 Mass. 71, 77 (1987); *Commonwealth* v. *A Juvenile,* 389 Mass. 128, 133-134 (1983). The judge's findings do not support the defendant's argument. The defendant had an opportunity in private to consult with his mother (and others) concerning his rights and his waiver of them. Both his mother and he then

signed a Miranda card. He either took advantage of the opportunity to consult or, if he did not, that choice "suggests that the juvenile's understanding was such that consultation was unnecessary." *Commonwealth* v. *MacNeill, supra* at 79.

The judge was fully warranted in concluding that the defendant and his mother understood his rights, that he had an opportunity to consult with his mother, and that the defendant voluntarily waived his Miranda rights.

2. The defendant argues that the trial judge erred in not instructing the jury that they might consider evidence of the defendant's intoxicated condition not only on the question of the specific intent that is an element of robbery, but also "in connection with the separate crime of murder." He makes this argument here for the first time, contending that there is a substantial likelihood that a miscarriage of justice has occurred (G. L. c. 278, § 33E; *Commonwealth* v. *Lennon,* 399 Mass. 443, 448 n.6 [1987]), and that he was denied due process of law.

Apparently without objection from the Commonwealth, the judge presented the charge of murder in the first degree to the jury solely on the theory of felony-murder, with armed robbery as the underlying felony. As to the robbery aspect, he told the jury that the Commonwealth had to prove beyond a reasonable doubt that the defendant assaulted the cab driver with the specific intent of stealing money from him. The judge then noted that there was evidence that the defendant had been drinking alcohol and may have used other drugs. He correctly told the jury that voluntary intoxication is never an excuse or justification for a crime. See *Commonwealth* v. *Johnson,* 374 Mass. 453, 462-465 (1978), and cases cited. He then added that they could consider evidence of the defendant's intoxication in deciding "whether or not the Commonwealth has proved beyond a reasonable doubt that the defendant had the specific intent to commit robbery."[2] In giving an instruction that the jury

---

[2] At this point and at one point earlier in his charge the judge told the jury that the Commonwealth had to prove a specific intent to rob. This instruction was more favorable to the defendant than required. The specific

could consider all the evidence, including the defendant's intoxication, in deciding the question of his specific intent, the judge conformed to the view we had recently expressed in *Commonwealth* v. *Henson*, 394 Mass. 584, 593 (1985). For subsequent opinions see *Commonwealth* v. *Sylvester*, 400 Mass. 334, 336 (1987); *Commonwealth* v. *Fano*, 400 Mass. 296, 305 n.14 (1987). Cf. *Commonwealth* v. *Grey*, 399 Mass. 469, 474 (1987) (mental impairment relevant to proof of specific intent).[3]

The defendant's argument is that, in addition to his instruction on intoxication as it might bear on a specific intent to steal, the judge should have told the jury that they could consider evidence of the defendant's intoxication generally in deciding whether he was guilty of murder. The argument derives from this court's opinions in *Commonwealth* v. *Moran*, 387 Mass. 644, 650-651 (1982), and *Commonwealth* v. *Matchett*, 386 Mass. 492, 508 (1982), in which we ruled that only felonies that involve a conscious disregard of the risk of human life could be the basis of a conviction of felony-murder. The defendant in effect argues that the judge improperly took from the jury the question whether the defendant consciously acted in a way inherently dangerous to human life when the judge told

---

intent element of the crime of robbery is the intent to steal. See G. L. c. 277, § 39 (1986 ed.), defining "robbery" as including a criminal taking "with intent to steal." See *Commonwealth* v. *Sheehan*, 376 Mass. 765, 772 (1978).

[3] At one point in his charge the judge told the jury that "[i]f you determine from all of the evidence that he was so intoxicated with either drugs or alcohol that he could not form an intent to rob or commit armed robbery, then you may consider it on whether or not the Commonwealth has proved beyond a reasonable doubt that the defendant had the specific intent to commit robbery." The defendant does not object to any aspect of this language as burden shifting. Viewing the charge as a whole, we conclude that the judge correctly placed the burden on the Commonwealth to prove specific intent beyond a reasonable doubt and negated any shifting of the burden of proof that may be contained in the quoted language.

The true question was whether, on all the evidence, the Commonwealth had proved beyond a reasonable doubt that the defendant had a specific intent to steal. The defendant did not have to prove anything, and the Commonwealth did not have to prove beyond a reasonable doubt that the defendant was not intoxicated.

the jury that, as matter of law, an armed robbery is inherently dangerous to human life. In so charging the jury, the judge properly followed our cases. See *Commonwealth* v. *Currie,* 388 Mass. 776, 785 (1983) (armed robbery with a gun); *Commonwealth* v. *Watson,* 388 Mass. 536, 544 (1983) (same). Cf. *Commonwealth* v. *Carter,* 396 Mass. 234, 237 n.3 (1985) (armed robbery with unloaded gun inherently dangerous).

Because the felony of armed robbery is inherently dangerous to human life as a matter of law, the fact of a defendant's intoxication by alcohol or some other drug is irrelevant to the question whether the felony was one warranting a conviction of murder in the first degree. Proof of such a felony, without more, is the equivalent of malice aforethought required for murder. *Commonwealth* v. *Matchett, supra* at 507. Our cases in which a criminal defendant's possible voluntary intoxication has been held to be relevant have no application here beyond the question of the defendant's specific intent to steal. See, e.g., *Commonwealth* v. *Henson,* 394 Mass. 584, 592-594 (1985) (specific intent crime); *Commonwealth* v. *Costa,* 360 Mass. 177, 186 (1971) (deliberate premeditation); *Commonwealth* v. *Perry,* 385 Mass. 639, 648-649 (1982) (extreme atrocity or cruelty). Cf. *Commonwealth* v. *Grey,* 399 Mass. 469, 474 (1987) (mental condition relevant to proof of specific intent elements of a crime); *Commonwealth* v. *Gould,* 380 Mass. 672, 681, 684-685 (1980) (mental illness relevant to deliberate premeditation and to extreme atrocity or cruelty).

In those instances in which the underlying felony is not inherently dangerous to human life as a matter of law (see, e.g., *Commonwealth* v. *Moran,* 387 Mass. 644, 651 [1982] [unarmed robbery]; *Commonwealth* v. *Matchett,* 386 Mass. 492, 508 [1982] [extortion]), the question whether the defendant acted in circumstances showing a conscious disregard for the risk to life is one for the jury. In those instances all evidence relevant to the defendant's state of mind is admissible (including evidence tending to show voluntary intoxication or mental impairment). As a general rule in such a case, an instruction that the jury should consider all the credible evidence bearing on whether the defendant acted with a conscious disregard for

a risk to life will suffice without the necessity of referring specifically in this respect to particular evidence (such as evidence of intoxication or mental impairment). The important point is that evidence of intoxication, for example, is admissible in such a case; defense counsel may argue that evidence to the jury; and the judge's charge should not foreclose the jury from considering that evidence.

In this case the jury found on proper instructions that the defendant had a specific intent to steal. It was not a denial of due process of law to rule, as a matter of law, that a death in the course of the commission of an armed robbery could be murder in the first degree without independent and additional proof of malice.

3. There is no basis on which we should exercise our responsibility under G. L. c. 278, § 33E, to alter the verdict or grant a new trial on the indictment charging murder. The defendant was the instigator and leader of the threesome involved in the robbery. He carried the gun, demanded the money, shot the victim, and divided the proceeds.

*Judgments affirmed.*