SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. DANIEL ROGERS

 
 Docket:
 SJC-13450
 
 
 Dates:
 March 6, 2024 – September 17, 2024
 
 
 Present:
 Budd, C.J., Kafker, Wendlandt, Georges, & Dewar, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Homicide. Robbery. Felony-Murder Rule. Malice. Practice, Criminal, Assistance of counsel, New trial, Postconviction relief, Verdict, Capital case. Constitutional Law, Assistance of counsel, Sentence. Mental Impairment. Intent. Evidence, Expert opinion, Credibility of witness, Intent. Witness, Expert, Credibility. Dangerous Weapon.
 
 

  
      Indictments found and returned in the Superior Court Department on May 12, 2004.
           Following review by this court, 459 Mass. 249 (2011), a renewed motion to reduce the verdict and a motion for a new trial, filed on January 3, 2018, were heard by John A. Agostini, J.
      A request for leave to appeal was reported by Lowy, J., in the Supreme Judicial Court for the county of Suffolk, and a second request for leave to appeal was allowed by him.
      David J. Nathanson (Eva G. Jellison also present) for the defendant.
      Ian MacLean, Assistant District Attorney, for the Commonwealth.
      Robert S. Chang, of Washington, Patrick Levin, Committee for Public Counsel Services, Claudia Leis Bolgen, Caitlin Glass, Radha Natarajan, Stephanie Hartung, & Katharine Naples-Mitchell for Antiracism and Community Lawyering Practicum at Boston University School of Law & others, amici curiae, submitted a brief.
      DEWAR, J.  In 2007, the defendant, Daniel Rogers, was convicted in the Superior Court of the murder in the first degree of Cristian Giambrone, a retail store employee, on a theory of felony-murder with armed robbery as the predicate felony.  The defendant also was convicted of assault and battery by means of a dangerous weapon stemming from his attack on another store employee, Henry Young.  We affirmed those convictions on direct appeal.  Commonwealth v. Rogers, 459 Mass. 249 (Rogers I), cert. denied, 565 U.S. 1080 (2011).
      In 2018, the defendant filed a motion for a new trial under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), and renewed a pending motion seeking a reduction of the verdict under Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995).  In 2021, the trial judge having retired, another judge of the Superior Court (motion judge) held an evidentiary hearing on the defendant's motions.  The focus of the hearing was whether the defendant's trial counsel was ineffective for failing to employ a neuropsychologist to examine the defendant and testify in support of a mental impairment defense.  The defendant proffered expert testimony that, at the time of the stabbings, his intent to commit armed robbery was impaired by panic brought on by actions of the store employees.
      The motion judge denied the defendant's motion for a new trial.  Nonetheless, the motion judge exercised his authority under rule 25 (b) (2) to reduce the jury's verdict to murder in the second degree.  The parties cross-petitioned for leave to appeal from the motion judge's decision under G. L. c. 278, § 33E (§ 33E).  A single justice of this court reserved and reported the defendant's petition seeking leave to appeal from the motion judge's denial of his motion for a new trial and granted the Commonwealth leave to appeal from the partial allowance of the defendant's motion for a reduction in the verdict.
      With respect to the defendant's petition for leave to appeal, we must first decide whether the issues he raises are "new and substantial" under § 33E, and, if any issue surmounts this threshold inquiry, whether the motion judge abused his discretion in denying the motion for a new trial.  In the Commonwealth's appeal, we are asked to reconsider whether rule 25 (b) (2) permits a trial court judge to reduce a verdict even after it has been affirmed on direct appeal, and, if the rule permits such a reduction, to decide whether the motion judge abused his discretion in reducing the jury's verdict to murder in the second degree.  For the following reasons, we affirm the order below in part and reverse in part:  we affirm the denial of the defendant's motion for a new trial, and, although rejecting the Commonwealth's argument that trial court judges lack discretionary authority under rule 25 (b) (2) to reduce a jury's verdict after affirmance on direct appeal, reverse the reduction of the verdict here.[1]
      1.  Background.  "We present the relevant factual and procedural background as taken from the record, reserving certain details for the discussion."  Commonwealth v. Tavares, 491 Mass. 362, 363 (2023).
      a.  Facts.  The defendant and two friends, Tashia Sneed and Quinnace Horton, routinely shoplifted merchandise, selling it to finance their use of drugs.  When the three friends shoplifted the day before the incident at issue here, the defendant told Sneed, "[D]on't worry about nothing, if [store employees] come running after you or anything like that, I'll fuck them up."
      On February 16, 2004, after using heroin, the three friends decided to shoplift in order to purchase more drugs.  Another friend drove the defendant, Sneed, and Horton to a store on Longwood Avenue in Boston.  On entering the store, the defendant began putting tubes of toothpaste into his jacket pockets.  A patron alerted Cristian Giambrone, a store employee, who chased after the defendant as he fled the store.  Two other store employees, Henry Young and Showky Lara, became aware of the situation and joined the chase, each armed with a box cutter or knife.  At least two of the three employees were wearing store uniform shirts with the store's corporate logo visible on the front.
      Giambrone was the first to reach the defendant and "flung" him against a wall; Young and Lara reached the pair soon after.  The defendant started "swinging" at Young and Lara, and tubes of toothpaste fell from his pockets.  Lara grabbed the defendant and told him that they were taking him back into the store because he had been shoplifting.  The defendant reached into his pocket, "flick[ed]" something that turned out to be a knife, and stabbed Young in the chest area.  Giambrone took two steps toward the defendant, who told him, "Back off, I got a knife."  In response, Giambrone outstretched and partially raised his arms up toward the defendant and said, "Yo, what the fuck"?  The defendant swung at Giambrone, stabbing him in the neck.  Young survived his injuries; Giambrone did not.
      The defendant began to flee, pursued by Lara.  The defendant stopped and, still holding the knife, said to Lara, "Come on, let's do this."  After a brief standoff, the defendant fled again, running to a nearby hospital.  After encountering a locked door, the defendant made his way to a second hospital.  Later that night, Boston police officers searched the second hospital and on the eighth floor found a discarded hat and jacket under a bench, as well as smeared blood on the wall above the bench.  Testing of the jacket, hat, and smeared blood revealed deoxyribonucleic acid (DNA) consistent with the defendant's.
      The next day, the defendant met up with Sneed and Horton.  The defendant told Sneed that he "fucked up bad" and "stabbed the boy."  The defendant also said that he cut his hand during the altercation, and that he fled because he was on probation and did not want to go back to jail.
      That same day, a groundskeeper from the first hospital found a knife with dried blood on it.  Testing revealed that DNA on the knife was consistent with Giambrone's.
      b.  Trial and direct appeal.  The defendant was indicted on charges of murder in the first degree for the death of Giambrone; armed assault with intent to murder Young; assault and battery by means of a dangerous weapon on Young; and two counts of armed robbery, one each for Giambrone and Young.  The Commonwealth tried the defendant in March and April of 2007, asserting all three theories of murder in the first degree:  deliberate premeditation; extreme atrocity or cruelty; and felony murder, with armed robbery as the predicate felony.  At the close of the evidence, the trial judge directed a verdict for the defendant on the theory of extreme atrocity or cruelty.
      The defenses at trial were lack of identification of the defendant as the stabber, self-defense, and that the police investigation was not thorough.  Defense counsel also argued that the defendant was incapable of forming the requisite intent to commit armed robbery because he was under the influence of drugs and alcohol.  The trial judge instructed the jury to consider the "credible evidence" about the defendant's use of drugs or alcohol and its effect, if any, in determining whether the Commonwealth had satisfied its burden of proof with respect to his ability to form the necessary intent.  The trial judge's instructions to the jury also included instructions on self-defense, murder in the second degree, and voluntary and involuntary manslaughter.
      On April 13, 2007, the jury returned guilty verdicts on the charges of murder in the first degree on the felony-murder theory; assault and battery by means of a dangerous weapon arising from the knife attack on Young; and armed robbery of Giambrone and Young.[2]  The jury acquitted the defendant on the charges of murder in the first degree on the theory of deliberate premeditation and armed assault with intent to murder Young.  Reviewing under § 33E, we affirmed the defendant's convictions in Rogers I, 459 Mass. at 251.
      c.  Posttrial motions.  Following his direct appeal, the defendant moved successfully to obtain funding for a neuropsychologist.  In 2018, the defendant filed a motion for a new trial under rule 30 (b), asserting that his trial counsel was ineffective for failing to investigate whether his intent to commit armed robbery was impaired by panic.  In addition, the defendant argued that due process precluded his armed robbery conviction because his three-inch folding pocket knife had been concealed during his theft of the toothpaste, prior to the altercation with the store employees, and his conduct therefore did not amount to armed robbery under the law at the time of the offense.  The defendant also claimed that this court applied the wrong standard of review in holding in his direct appeal that the admission of a substitute medical examiner's testimony was harmless error.  See Rogers I, 459 Mass. at 266.
      Together with his motion for a new trial, the defendant also renewed his pending motion seeking a reduction of the verdict under rule 25 (b) (2).  The defendant had filed the motion in 2012 but had then requested that the trial judge take no action on it prior to the filing of his motion for a new trial under rule 30 (b).
      i.  Evidentiary hearing.  Over two days in December 2021, the motion judge held an evidentiary hearing on the defendant's new trial motion.  The defendant called three witnesses at the evidentiary hearing:  Michael Andrick; William Rinn, Ph.D.; and the defendant's trial counsel, who had also represented the defendant on direct appeal.
      Andrick was the director of outreach services at the Pine Street Inn, a large homeless shelter in Boston.  He testified that most homeless individuals have a clinically significant history of "complex trauma."  This trauma, in turn, can cause "hypervigilan[ce,] . . . anxiety, panic disorders, [posttraumatic stress disorder, and] night terrors."  Because of this, Andrick testified, Pine Street Inn employees are trained to move slowly around homeless individuals and avoid touching them.  Andrick had not met the defendant.
      Rinn is a neuropsychologist and former instructor in the departments of neurology and psychiatry at Harvard Medical School.  Based on his neuropsychological evaluation of the defendant and his review of police reports and trial transcripts, Rinn opined that, at the time of the events, the defendant lacked the ability to form the requisite intent to commit armed robbery.  Rinn explained that, even for "normal people," a "panic episode" can cause the subcortical structures of the brain to override the cerebral and frontal cortices, leading to a loss of volitional control.  Rinn likened the experience to that of "a person on fire" or someone who is "in the process of drowning in water."  In Rinn's opinion, the defendant experienced a "panic episode" that caused him to enter a dissociative "fight or flight" state wherein he lost the ability to form or act on an intention.  Rinn testified that the episode began "after [the defendant] left the store and was pursued by the [store] employees" and still had not resolved fully when the defendant was at his friend's house after the incident.  Rinn opined that, while he "[did not] have any evidence" that the defendant had a panic disorder, the defendant was more susceptible to a panic episode due to his experiences with chronic homelessness, living with a dysfunctional family and associated trauma, and exposure to racial prejudice and violence when he was sent to live in rural Alabama as a child.[3]
      The defendant's trial counsel testified that he based the defense at trial on theories of impairment by intoxication, self-defense, and abandonment of the attempted armed robbery.  He further testified that Rinn's opinion regarding the defendant's impaired intent from the panic episode would have bolstered and been consistent with the trial defenses he pursued, and that he would have used Rinn's evaluation if available at the time.  It had not, however, "occur[red] to [him]" to have the defendant evaluated by an expert to assess the defendant for such a mental impairment.
      ii.  Decision and order.  On February 28, 2022, the motion judge issued a memorandum of decision and order (memorandum) on the defendant's rule 30 (b) and rule 25 (b) (2) motions.
      The motion judge first conducted a Daubert-Lanigan analysis to assess the admissibility of Rinn's opinion that, due to a series of "episodic panic attacks," the defendant lacked the ability to form the intent to commit armed robbery.  See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 585-591 (1993); Commonwealth v. Lanigan, 419 Mass. 15, 25-26 (1994).  Despite finding Rinn to be a "qualified" expert in the field of forensic psychology, the motion judge concluded that the defendant had failed to establish that Rinn's testimony was based on a reliable methodology or that the methodology was applied to the facts of the case in a reliable manner.  The motion judge further concluded that, even if the evidence were admissible, the failure to pursue such a defense did not reflect "serious incompetency" on the part of trial counsel, and that, in any case, for reasons described further below, the defendant was not deprived of a "substantial ground of defence."  See Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).
      The motion judge also rejected the defendant's argument that, because his pocket knife was concealed during his theft of the toothpaste prior to the altercation with the store employees, he could not be convicted under the law of armed robbery as it existed at the time of his offense.  And the motion judge held that Rogers I barred the defendant's renewed claim that this court applied the wrong standard in his direct appeal in holding that the admission of the substitute medical examiner's testimony was harmless error.  See Rogers I, 459 Mass. at 264, 266 (error admitting factual findings from autopsy report "harmless beyond a reasonable doubt" where findings not relevant to any contested issue).
      The motion judge nonetheless allowed in part the defendant's motion for a reduction of the verdict under rule 25 (b) (2), having concluded "that justice was not done" in this case.  Finding that, "[g]iven the facts of the crime, 'there is no question of reducing the verdict below murder,'" the motion judge implicitly denied the defendant's motion insofar as he sought a reduction to manslaughter.  The motion judge instead entered a verdict of murder in the second degree.  Based on the reduced verdict, the motion judge resentenced the defendant to life imprisonment with parole eligibility after fifteen years for the murder of Giambrone, to run consecutively with the sentence of from nine to ten years for assault and battery by means of a dangerous weapon on Young.[4]
      iii.  Gatekeeper.  The parties timely cross-petitioned a single justice of this court for leave to appeal from the motion judge's decision under § 33E.  The defendant sought leave to appeal from the denial of his motion for a new trial and the partial denial of his motion to reduce the verdict insofar as it sought reduction to manslaughter, and the Commonwealth sought leave to appeal from the reduction of the verdict to murder in the second degree.  The single justice reserved and reported to this court the defendant's petition for leave to appeal and allowed the Commonwealth's appeal.  We consolidated the defendant's reported petition with the Commonwealth's appeal.
      2.  Discussion.  a.  The defendant's petition.  To appeal from an adverse decision on a postconviction motion, "a capital defendant whose 'whole case' has already been reviewed [and upheld] by this court pursuant to . . . § 33E" must first show that "there is a 'new and substantial' issue that this court could not have considered in the course of plenary review."  Commonwealth v. Gunter, 459 Mass. 480, 487, cert. denied, 565 U.S. 868 (2011), quoting G. L. c. 278, § 33E.  Because the single justice did not decide the threshold question whether the defendant has met this burden and instead reserved and reported the petition to the full court, we address this initial question with respect to each issue the defendant raises.  See Commonwealth v. Ambers, 397 Mass. 705, 707-708 (1986).
      For an issue to be "substantial" in the context of the gatekeeper provision of § 33E, the issue need "only be a meritorious issue in the sense of being worthy of consideration by an appellate court."  Gunter, 459 Mass. at 487.  The bar for establishing newness, however, "presents a more significant hurdle."  Commonwealth v. Billingslea, 484 Mass. 606, 621 (2020), quoting Gunter, supra.  Section 33E "requires that the defendant present all his claims of error at the earliest possible time"; "failure to do so precludes relief on all grounds generally known and available at the time of trial or appeal."  Billingslea, supra, quoting Gunter, supra.  An issue thus is not "new" within the meaning of § 33E "where either it has already been addressed, or where it could have been addressed had the defendant properly raised it at trial or on direct review."  Billingslea, supra, quoting Gunter, supra.
      Where we do reach the merits, we review the denial of the defendant's motion for a new trial "only to determine whether there has been a significant error of law or other abuse of discretion."  Commonwealth v. Weichell, 446 Mass. 785, 799 (2006), quoting Commonwealth v. Grace, 397 Mass. 303, 307 (1986).  Because "the motion judge did not preside at the trial, we defer only to the judge's credibility determinations" at the evidentiary hearing on the motion and "regard ourselves in as good a position as the motion judge to assess the trial record."  Weichell, supra, quoting Grace, supra.
      Foremost among the issues presented by the defendant's petition is a claim that trial counsel was ineffective for failing to consult an expert to evaluate the defendant and testify in support of a mental impairment defense.  We reach the merits of this substantial claim.  We do not reach the merits of the remaining claims in the defendant's petition, as they are not both "new" and "substantial."  G. L. c. 278, § 33E.
      i.  Mental impairment defense.  The defendant's petition for leave to appeal first presents a claim that trial counsel was ineffective for failing to have a neuropsychologist evaluate him and testify at trial.  The defendant contends that this failure, in turn, deprived him of the defense that panic impaired his ability to form the necessary intent to commit armed robbery.
      We begin by exercising our discretionary role as gatekeeper under § 33E upon the single justice's reservation and report of the defendant's petition to determine whether this issue is both new and substantial.  We first conclude that the claim is "new," notwithstanding that the defendant's direct appeal at least in theory presented an earlier opportunity to raise a claim that his trial counsel was constitutionally ineffective.  A direct appeal is not "the preferred method" for raising a claim of ineffective assistance of counsel.  Commonwealth v. Zinser, 446 Mass. 807, 810 (2006).  Indeed, "our courts strongly disfavor raising claims of ineffective assistance on direct appeal," id. at 811, when the record "is bereft of any explanation by trial counsel for his actions," id., quoting Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5 (2002).  While we have recognized a narrow exception where "the factual basis of the claim appears indisputably on the trial record," such is plainly not the case here, where the defendant's claim rests on expert testimony not presented at trial.  Zinser, supra, quoting Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994).  Moreover, we have long recognized that, where, as here, a "defendant was represented by the same attorney at the trial and on [the] initial appeal," the defendant "is not precluded from seeking review" of an ineffective assistance of counsel claim "because of the failure of his first attorney" to raise that claim on direct appeal; "[i]t would be unrealistic to expect [the] first attorney to have raised a claim calling his own competence into question."  Commonwealth v. Lanoue, 409 Mass. 1, 3-4 (1990).  See, e.g., Commonwealth v. Egardo, 426 Mass. 48, 49-50 (1997) (defendant retained ineffective assistance of counsel claim not raised on direct appeal where trial and appellate counsel both from same agency).  The defendant's first motion for a new trial, before us now, thus represented the "earliest possible time" for presenting this claim of ineffective assistance of counsel.  Billingslea, 484 Mass. at 621, quoting Gunter, 459 Mass. at 487.
      Second, we readily conclude that the defendant's claim is substantial "in the sense of being worthy of consideration by an appellate court."  Billingslea, 484 Mass. at 621, quoting Gunter, 459 Mass. at 487.  While, for the reasons that follow, we find no abuse of discretion in the motion judge's ultimate decision to deny the defendant's motion for a new trial based on the claim, we nevertheless view the defendant's petition as presenting the kind of "meaningful" appeal that a single justice should allow.  See Commonwealth v. Smith, 460 Mass. 318, 322 (2011), citing Commonwealth v. Francis, 411 Mass. 579, 584-585 (1992), and Leaster v. Commonwealth, 385 Mass. 547, 550 (1982) ("the court in the past has expressed confidence -- and we remain confident today -- that single justices faced with gatekeeper applications under § 33E will allow cases to proceed to the full court in all meaningful matters . . . and will correctly screen out those that do not warrant another appeal").
      To prevail on a claim of ineffective assistance of counsel, "the defendant must show, first, that 'there has been serious incompetency, inefficiency, or inattention of counsel . . . falling measurably below that which might be expected from an ordinary fallible lawyer' and, second, that counsel's conduct 'has likely deprived the defendant of an otherwise available, substantial ground of defence.'"  Commonwealth v. Alvarez, 433 Mass. 93, 101 (2000), quoting Saferian, 366 Mass. at 96.  See Commonwealth v. Wright, 411 Mass. 678, 682 n.1 (1992), S.C., 469 Mass. 447 (2014) (after murder conviction has been affirmed on plenary review under § 33E, "[a]ny claim of ineffectiveness of counsel presented in a subsequent appeal from the denial of a motion for a new trial, authorized by a single justice of this court, would not be tested under the § 33E standard but on the applicable constitutional standards").  While the motion judge rejected this claim on multiple grounds, we need address only one.
      We begin by acknowledging that a defendant may bring a mental impairment defense to a charge of armed robbery.  See Commonwealth v. Tevenal, 401 Mass. 225, 228–229 (1987).  We have long recognized that a jury may "consider evidence of mental impairment at the time of the crime in deciding whether the Commonwealth has proved the defendant's specific intent."  Commonwealth v. Grey, 399 Mass. 469, 470-471 (1987).  Unlike a defense of lack of criminal responsibility, evidence of mental impairment does not "excuse" a crime committed by the defendant.  Id. at 474.  Rather, evidence of mental impairment relates to whether the Commonwealth has proven a crime at all -- in particular, whether the defendant had the specific intent necessary to commit an offense.  See id.  Accordingly, with respect to armed robbery, a defendant may present evidence of a mental impairment to challenge the prosecution's proof of the required specific "intent to steal."  Tevenal, supra at 228-229 & n.2.  See Commonwealth v. Duke, 489 Mass. 649, 658 (2022) (armed robbery requires proof that defendant "[1] was armed with a dangerous weapon; [2] either applied actual force or violence to the body of the person identified in the indictment, or by words or gestures put [that person] in fear; [3] took the money or the property of another; and [4] did so with the intent [or sharing the intent] to steal it" [quotation and citation omitted]).
      Here, the crux of the proffered expert testimony was that, once confronted by employees outside the store after he had stolen the toothpaste, the defendant entered a state of "fight or flight" panic in which he could not form an intent.  Rinn testified that this state of panic results from the "subcortical" structures of the brain overwhelming the capacity of the frontal cerebral cortex, such that "[t]he part of the brain that handles intentionality, at that moment, is not working."  Although he opined that certain adverse life experiences made the defendant more susceptible to a panic episode in the circumstances here, Rinn testified that he did not have evidence that the defendant had a panic disorder.  Rather, in Rinn's view, "[a]ny normal person would be susceptible to . . . a panic attack or a panic episode in [these] circumstances," and "you'd almost expect it."
      The motion judge concluded that, even if the expert's testimony were admissible, and even if trial counsel's failure to pursue a mental impairment defense fell measurably below the standard expected of an ordinary fallible lawyer,[5] this failure did not deprive the defendant of an "otherwise available, substantial ground of defence."  See Saferian, 366 Mass. at 96.  The motion judge noted that the jury heard "uncontradicted evidence that Rogers planned to steal the [store's] merchandise with his partners, that he was a professional shoplifter, that he put unpurchased toothpaste into his pockets, that he fled the store, and that he attempted to evade the [store's] employees who confronted him for stealing."  Moreover, the motion judge noted, "[t]here was evidence that he planned for a potential confrontation with store employees" and came "armed with a knife."  "Under these circumstances," the motion judge reasoned, "a jury finding that [the defendant] lacked the intent to murder is reasonable; however, a finding that he lacked the intent to [steal][6] would be difficult for the jury to accept."  With respect to the intent to steal, "[n]othing in Dr. Rinn's testimony would have been particularly impactful . . ., not least because [Dr. Rinn's] focus was largely on the episodic panic attacks [the defendant] allegedly experienced after" stealing the toothpaste, when he was "being pursued and then confronted."  The motion judge therefore found that "Dr. Rinn's proposed testimony would have had no appreciable impact on the jury" as they considered the charge of armed robbery.
      The defendant contests this conclusion on the ground that the motion judge improperly weighed the credibility of Rinn's testimony, usurping the jury's role.  See Commonwealth v. Hinds, 487 Mass. 212, 218 (2021), quoting Commonwealth v. Roberio, 428 Mass. 278, 281 (1998), S.C., 440 Mass. 245 (2003) (issue of expert's credibility "for a jury, not the judge").  The defendant argues that "Dr. Rinn's testimony on its face absolutely did undermine the evidence of [the defendant's] intent to commit armed robbery"; that the motion judge's decision simply "reiterated the same trial evidence that he felt undermined Dr. Rinn's opinion that [the defendant's] intent was impaired"; and that the motion judge circularly concluded that "[the defendant] had all the intents required to commit robbery because he committed a robbery."
      We discern no abuse of discretion in the motion judge's decision to deny the defendant's motion for a new trial on this ground.  The question "whether to credit the expert's ultimate opinion" would indeed be "a matter of weight for [a] jury to decide."  Hinds, 487 Mass. at 218.  But the motion judge's Saferian analysis regarding whether the foregone expert testimony deprived the defendant of a substantial ground of defense did not rely on weighing the evidence regarding whether the defendant actually was able to form a specific intent during the period that, according to Rinn's testimony, he was in a panic.  Rather, the motion judge's reasoning rested squarely on the nature of the specific intent required to prove armed robbery -- intent to steal -- and the overwhelming evidence that, no matter whether Rinn's opinions were credited, the defendant did indeed have that specific intent.  Because Rinn's testimony related only to the period during which the defendant sought to escape after having stolen from the store while armed with a knife, the testimony did not call into question the defendant's intent to steal in the first place.  The motion judge therefore did not err in concluding that the failure to present this expert opinion did not deprive the defendant of a substantial ground of defense.  See Commonwealth v. Alicea, 464 Mass. 837, 851 (2013) (no ineffective assistance where trial record did not suggest expert could have assisted defendant's case "in any meaningful fashion").
      Resisting this conclusion, the defendant argues that armed robbery requires multiple "intents," in addition to the specific intent to steal, including "the intent to use force with a dangerous weapon" and the "intent[] to complete a robbery."  But, as discussed, Rinn's testimony in support of a mental impairment defense would have been relevant only insofar as it bore on whether the prosecution had proven the required specific intent for armed robbery -- that is, the intent to steal.  Tevenal, 401 Mass. at 228-229 & n.2.  Indeed, in Tevenal, we rejected a defendant's argument that the jury there should have been instructed that evidence of mental impairment could otherwise bear on whether to convict him of murder in the first degree on a felony-murder theory in connection with an armed robbery.  Id. at 230.  Rather, we concluded, mental impairment has "no application here beyond the question of the defendant's specific intent to steal."  Id.
      The motion judge thus did not abuse his discretion in concluding that the failure to present the proffered evidence of mental impairment due to panic -- relating only to the period after the defendant had departed the store with the stolen toothpaste -- did not deprive the defendant of a substantial ground of defense and therefore did not amount to ineffective assistance of counsel.  See Saferian, 366 Mass. at 96.  See also Alicea, 464 Mass. at 851.
      ii.  Remaining arguments.  We have reviewed the defendant's remaining claims in his gatekeeper petition and determined that they are not both "new" and "substantial" under the standard set forth in § 33E.  See Billingslea, 484 Mass. at 620-621.
      First, the defendant argues that, prior to Rogers I, "the mere possession of a non-per se-dangerous weapon alone, without the use, display, or threat of use of that weapon, had never been held to be armed robbery in the Commonwealth," and that upholding his conviction on this theory therefore violated his right to due process.  See, e.g., Santiago v. Commonwealth, 428 Mass. 39, 43, cert. denied, 525 U.S. 1003 (1998), quoting Bouie v. Columbia, 378 U.S. 347, 354 (1964) (due process clause prohibits retroactive application of "judicial construction of a criminal statute" when application "is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue'").  The defendant contends, in particular, that his shoplifting could not become armed robbery until he possessed a dangerous weapon, see Duke, 489 Mass. at 658; his concealed pocket knife did not qualify as a dangerous weapon until he actually used it to stab the victims, see Commonwealth v. Delaney, 442 Mass. 604, 615 (2004); and he used the knife to stab the victims only "after his panic state began," when, he argues, he lacked "intent at that point to commit an armed robbery."
      This claim, which could have been presented on direct appeal, is not "new."  Billingslea, 484 Mass. at 620-621.  Indeed, we rejected in the defendant's direct appeal a similar attempt to "segment" the elements of armed robbery, where the defendant argued that, by the time he used the pocket knife, he had abandoned the theft of the toothpaste and was seeking solely to escape.  Rogers I, 459 Mass. at 252-256.  We affirmed that the jury could view the full episode "as a continuum," id. at 254, quoting Commonwealth v. Smith, 21 Mass. App. Ct. 619, 624 (1986), S.C., 400 Mass. 1002 (1987), and that "the crime of armed robbery does not require that the perpetrator utilize the weapon in the perpetration of the robbery," because the "weapon's presence, whether or not it is used, creates a greater potential for injury."  Rogers I, supra at 253 n.6, citing Commonwealth v. Blackburn, 354 Mass. 200, 205 (1968).[7]  We further reaffirmed that "[a]n attempted robbery is not ended merely because . . . the robber[] cease[s] to desire to proceed, has in mind only a purpose to escape, and shoots [or stabs] in furtherance of that purpose."  Rogers I, supra at 256, quoting Commonwealth v. Dellelo, 349 Mass. 525, 529 (1965).  The defendant's claim in his gatekeeper petition -- now contending more specifically that the elements of armed robbery must be segmented based on the moment the knife became a dangerous weapon -- "raises no new facts and only presents 'subtle shift[s]' in his . . . theory of the case."  Commonwealth v. Watt, 493 Mass. 322, 327 (2024), quoting Commonwealth v. Watkins (No. 1), 486 Mass. 801, 807 (2021).  It therefore is not "new" within the meaning of § 33E.  See Watt, supra, quoting Watkins (No. 1), supra.
      Second, the defendant argues that his conviction of armed robbery as the predicate felony for felony-murder cannot stand because, based on the value of the stolen toothpaste, he could be charged only with shoplifting, not larceny, and armed robbery requires that the defendant steal "money or other property which may be the subject of larceny."  G. L. c. 265, § 17.  Notwithstanding that no minimum threshold value is required by either the express terms of the armed robbery statute, see id., or the common law of robbery, see, e.g., 2 W.R. LaFave & A.W. Scott, Substantive Criminal Law § 8.4(b), at 354 (1986) (robbery constitutes "aggravated type of larceny" that carries felony charge "without regard to the value of the property taken"), the defendant observes that the shoplifting statute in effect at the time of his offense provided that "[i]f the retail value of the goods obtained is less than one hundred dollars," then the shoplifting statute "shall apply to the exclusion of" the larceny statute, G. L. c. 266, § 30A, as amended by St. 1996, c. 430.[8]  The defendant argues that, because the shoplifting statute "appl[ies] to the exclusion of" the larceny statute for thefts of retail goods beneath the monetary threshold, the toothpaste he stole was not property that "may be the subject of larceny" under the armed robbery statute.  This argument was available to the defendant both at trial and on direct review.  The claim therefore is not "new" within the meaning of the gatekeeper provision of § 33E, because it could have been raised in those earlier proceedings, see Billingslea, 484 Mass. at 621, and we therefore will not consider its merits.
      Finally, the defendant's other remaining claims warrant little discussion.  The defendant's claim that the jury instructions were erroneous because they functionally deprived him of the right to self-defense is not new; it was addressed and rejected by the full court on plenary review.  See Rogers I, 459 Mass. at 260-261 ("Assuming without deciding that the defendant was entitled to an instruction on self-defense in the circumstances of this case, the [trial] judge instructed on this issue and the instruction was proper").  And the defendant's claim that the court in Rogers I applied the incorrect standard of review to his claimed confrontation clause violation -- "harmless" as opposed to "harmless beyond a reasonable doubt" –- is neither new nor substantial.[9]  The opinion expressly stated the correct standard the defendant would have us apply.  See id. at 264 ("we review to determine whether there was error, and if so whether that error was harmless beyond a reasonable doubt" [emphasis added]).[10]
      iii.  Conclusion.  For the foregoing reasons, we affirm the motion judge's order denying the defendant's motion for a new trial.  See Weichell, 446 Mass. at 799.
      b.  The Commonwealth's petition.  Appealing from the motion judge's partial allowance of the defendant's motion to reduce the jury's verdict under rule 25 (b) (2), the Commonwealth makes two arguments.  First, the Commonwealth urges this court to revisit our rule 25 (b) (2) jurisprudence and hold that a motion judge's power to reduce a verdict is extinguished after a defendant's conviction has been affirmed on direct appeal.  We decline to do so.  Second, the Commonwealth argues that, in any case, the motion judge's reduction of the jury's verdict here, from murder in the first degree to murder in the second degree, was an abuse of discretion.  We agree and, upon our own review of the trial record, reverse the partial allowance of the defendant's rule 25 (b) (2) motion.
      i.  Availability of relief under rule 25 (b) (2).  General Laws c. 278, § 11, provides in part that "[a] judge may on a renewed motion for a directed verdict of not guilty pursuant to the Massachusetts Rules of Criminal Procedure set aside the verdict and order a new trial, or order the entry of a finding of guilty of any offense included in the offense charged in the indictment or complaint."  "Rule 25 (b) (2) incorporates this statutory authority."  Commonwealth v. Woodward, 427 Mass. 659, 666 (1998).  The rule's first sentence "permits a motion for a new trial to be presented in conjunction with the renewal of a denied motion for a required finding of not guilty," Commonwealth v. Keough, 385 Mass. 314, 317 (1982), if the renewal occurs "within five days after the jury is discharged," Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995).  The rule's second sentence provides that, in the event the jury return a guilty verdict, the judge may set aside the verdict and order a new trial; order the entry of a finding of not guilty; or, as the motion judge below did, "order the entry of a finding of guilty of any offense included in the offense charged in the indictment or complaint."  Id.  The rule does not include an express limit on the time period in which a judge may provide such relief.  See id.  Accordingly, we have upheld the reduction of jury verdicts even after direct appeal of a conviction of murder in the first degree and even by a judge other than the trial judge.  See, e.g., Gilbert, 447 Mass. at 162-163.
      The Commonwealth urges us to adopt a revised and more restrictive construction of rule 25 (b) (2), as a result of which rule 30 (b) would offer the sole procedural basis for relief after a defendant's direct appeal has concluded.  See Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001) (judge may "grant a new trial at any time if it appears that justice may not have been done").  In support, the Commonwealth emphasizes the five-day limit tied to the trial that appears in the first sentence of rule 25 (b) (2); the contrast with the "at any time" language of rule 30 (b), not present anywhere in rule 25 (b) (2); and the important interests in finality that weigh against disturbing convictions once they have been affirmed on direct appeal.  See, e.g., Commonwealth v. Amirault, 424 Mass. 618, 637 (1997) (community's interest in finality of criminal judgments "comes to the fore" once appellate process has "run its course").
      We are not convinced that we should adopt the Commonwealth's more restrictive construction of rule 25 (b) (2).  Our interpretation of rule 25 (b) (2) is a long-standing one.  Because the second sentence of rule 25 (b) (2) "contains no . . . time limit within which a defendant must file . . . a motion" under the rule, Commonwealth v. Aguiar, 400 Mass. 508, 511 (1987), we have repeatedly rejected arguments that a defendant's motion for relief was untimely, see, e.g., id. at 511-512 & n.3; Keough, 385 Mass. at 316-318.  We have likewise held that a judge retains the authority to reduce a verdict even after direct appeal.  See Gilbert, 447 Mass. at 165-169.  And, rather than viewing rules 25 (b) (2) and 30 (b) as mutually exclusive mechanisms of postconviction relief, we have recognized that the two rules "overlap in significant respects" and are complementary.  Commonwealth v. Sanchez, 485 Mass. 491, 503 (2020), quoting Gilbert, supra at 166.  "Both provisions embody a legislative delegation of 'judicial responsibility to ensure that the result in every criminal case is consonant with justice.'"  Sanchez, supra at 504, quoting Woodward, 427 Mass. at 666.  To this end, rule 25 (b) (2) distinctly grants judges discretion to reduce a verdict -- a form of relief not available under rule 30 (b) -- thus providing judges with "the flexibility to fashion appropriate relief" at any time depending on the circumstances.  Gilbert, supra at 167.
      The Commonwealth offers no compelling reason for departing from this understanding of rule 25 (b) (2).  While the Commonwealth contends that judges' authority under the rule should be extinguished upon a conviction's affirmance, the Commonwealth offers no basis in the rule's text for that particular endpoint and instead principally rests on the interests in finality.  We recognize that, "[w]hen a serious crime has been committed, the victims and survivors, witnesses, and the public have an interest that the guilty not only be punished but that the community express its condemnation with firmness and confidence."  Amirault, 424 Mass. at 637.  However, "the valuable finality of judicial proceedings must yield to our system's reluctance to countenance significant individual injustices."  Watt, 493 Mass. at 336, quoting Commonwealth v. Brescia, 471 Mass. 381, 388 (2015).  The Commonwealth's interpretation would divest judges of a precise, equitable tool not available under rule 30 (b) to remedy injustices that were not remedied on direct appeal, leaving solely the remedy of a new trial.  Yet a new trial may not always be feasible given the passage of time.  See Amirault, supra.  See also Gilbert, 447 Mass. at 166 (noting new trial could provide "undeserved windfall" for defendant where jury had unanimously found elements of lesser charge met).  And, even where possible, a new trial causes additional delay, entails expenditure of far greater resources than an appropriate reduction of the verdict, and may impose significant burdens on victims and their families.  Cf. Mass. R. Crim. P. 2 (a), 378 Mass. 844 (1979) (rules should be construed "to secure simplicity in procedure, fairness in administration, and the elimination of expense and delay").  The Commonwealth's interpretation would thus restrict a trial judge's ability to "fashion appropriate relief after a verdict has been returned," Gilbert, supra at 167, "consonant with justice," Sanchez, 485 Mass. at 504, quoting Woodward, 427 Mass. at 666.
      We therefore reaffirm that motion judges retain discretionary authority under rule 25 (b) (2) to reduce a jury's verdict even after a defendant's conviction has been affirmed on direct appeal.  See Gilbert, 447 Mass. at 165-169.
      ii.  Reduction of the jury's verdict.  We next turn to the motion judge's decision to reduce this defendant's verdict.  We review a judge's order to reduce a verdict for abuse of discretion or other error of law.  Commonwealth v. Pfeiffer, 492 Mass. 440, 446 (2023).  "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives."  Id., quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).  The Commonwealth argues that the motion judge impermissibly considered the sentence for a conviction of murder in the first degree -- life without the possibility of parole -- in reducing the defendant's conviction to murder in the second degree.  See Commonwealth v. Sokphann Chhim, 447 Mass. 370, 384 n.15 (2006) ("Rule 25 [b] [2] is not a tool for reducing a sentence to avoid imposition of a minimum mandatory sentence that appears 'unjust'").
      In assessing a motion pursuant to rule 25 (b) (2), "a judge may review all the evidence, including the defendant's version of the facts, in deciding whether the verdict comports with justice."  Woodward, 427 Mass. at 668.  A judge's discretion to reduce a verdict is appropriately exercised where "the weight of the evidence in the case, although technically sufficient to support the jury's verdict, points to a lesser crime," or where "weaknesses in the evidence supporting the jury's verdict were coupled with trial error that may have influenced the jury's assessment of the issue."  Commonwealth v. Rolon, 438 Mass. 808, 821-822 (2003).  See, e.g., Commonwealth v. Millyan, 399 Mass. 171, 188-189 (1987) (affirming reduction to murder in second degree where evidence of intoxication undermined theory of deliberate premeditation and jury not instructed on issue of impairment due to intoxication).
      While trial judges have "broad authority" under rule 25 (b) (2) to reduce a jury's verdict, that power "is not without constraint."  Sanchez, 485 Mass. at 504-505.  Any reduction must be to a lesser included offense of the offense charged, Mass. R. Crim. P. 25 (b) (2), and "the lesser included offense must be unaffected by the error warranting the reduction," Sanchez, supra at 505.  In addition, "[a] reduction to a lesser verdict is not justified when it 'would be inconsistent with the weight of the evidence' or is 'based solely on factors irrelevant to the level of offense proved.'"  Id., quoting Rolon, 438 Mass. at 822.  Finally, we "expect a judge to state the reasons for a reduction in verdict."  Woodward, 427 Mass. at 669, citing Commonwealth v. Gaulden, 383 Mass. 543, 556 (1981).
      Here, the motion judge concluded that the defendant had "a fair trial" and was "criminally responsible for murdering and stabbing the victims."  The motion judge nevertheless exercised his discretion to reduce the defendant's conviction of murder in the first degree to a verdict of murder in the second degree, because the case left him "with a sense that justice was not done."  Explaining his view, the motion judge referenced this court's decision in Commonwealth v. Brown, 477 Mass. 805, 825 (2017), cert. denied, 139 S. Ct. 54 (2018) (Gants, C.J., concurring), newly requiring a finding of "actual malice" for all murder convictions; emphasized that the defendant's sentence of life without the possibility of parole arose from an incident that began as mere shoplifting; and described the "spontaneous and impulsive, not premediated," nature of the defendant's conduct, such that the victim's death resulted from "the confluence of very unfortunate and unpredictable events."
      Reducing the verdict on these grounds was an abuse of discretion.  First, insofar as the motion judge relied on our decision in Brown, that reliance was improper.  As the motion judge acknowledged, our holding in Brown eliminating common-law felony-murder as an independent theory of murder is only "to be applied prospectively," to trials commencing after the Brown opinion was issued.  See Brown, 477 Mass. at 807.  And we have since held that judges cannot in effect make Brown retroactive by reducing a conviction of murder in the first degree under rule 25 (b) (2) for lack of malice.  See Pfeiffer, 492 Mass. at 453-454 (noting Commonwealth may have tried cases predating Brown differently "had it known that the jury's failure to find malice would justify a reduction in the verdict").  See also Commonwealth v. Tate, 486 Mass. 663, 674, 677 (2021) (rejecting defendant's request to apply Brown retroactively on direct appeal and declining to reduce conviction under § 33E); Commonwealth v. Martin, 484 Mass. 634, 644-645, 648-649 (2020), cert. denied, 141 S. Ct. 1519 (2021) (same).  The motion judge nevertheless commented that Brown had "undercut the very basis for" this defendant's felony-murder conviction.  Insofar as the judge thus relied on Brown, that reliance cannot support reducing the verdict here.  See Pfeiffer, supra at 454 (motion judge "does not have the discretion to supersede our determination that a new rule should be applied prospectively only").
      Second, the motion judge improperly considered the sentence for murder in the first degree -- life in prison without the possibility of parole -- in reducing the verdict.  The sentence for an offense is not an appropriate consideration for reducing a verdict under rule 25 (b) (2).  See Sokphann Chhim, 447 Mass. at 384 n.15.  Setting a mandatory minimum sentence is "a subject particularly within the authority of the legislative branch."  Id.  While the defendant contends that the judge's references to the sentence for murder in the first degree were "fleeting" and did not actually form part of the basis for the judge's decision to reduce the sentence, this characterization is not borne out by the judge's written memorandum, which repeatedly emphasized the defendant's sentence.  Most significantly, at the conclusion of the memorandum, the judge's distillation of why he "believe[d] that this is one of those rare cases that militates against a first-degree conviction," and why "[a] verdict of murder in the second degree is more consonant with justice," is a final sentence that states, "Although both crimes carry mandatory life sentences, second degree permits eligibility for parole at some point."  The sentence for murder in the first degree thus plainly factored into the motion judge's decision to reduce the defendant's verdict.  This was error.  See Sokphann Chhim, supra.
      Third, the motion judge's discussion of evidence that the defendant acted spontaneously, without premeditation, and in response to being confronted by store employees also is not an appropriate basis for reducing the defendant's conviction of murder in the first degree on a felony-murder theory.  While the absence of premeditation is relevant to a conviction of murder in the first degree based on a theory of deliberate premeditation or extreme atrocity or cruelty, "it is not germane to felony-murder" under the common law applicable at the time of the defendant's offense, which does not require a showing of malice.  Rolon, 438 Mass. at 823.  See Commonwealth v. Moran, 387 Mass. 644, 649 (1982) (intent to commit predicate felony substitutes for malice under felony-murder theory).  Accordingly, evidence showing a lack of premeditation to kill or that the defendant was provoked does "not in any sense detract from evidence that the defendant committed the predicate felony and is not a proper basis on which to reduce a conviction of felony-murder."  Rolon, supra.  The motion judge therefore abused his discretion in reducing the verdict on this ground, where the evidence did not "point[] to a lesser crime" but instead pointed squarely at felony-murder.  Id. at 821.  See Sanchez, 485 Mass. at 505 (reduction to lesser verdict not justified when "based solely on factors irrelevant to the level of offense proved" [citation omitted]).
      In sum, the motion judge's stated reasons neither show how the evidence "point[ed] to [the] lesser crime" of murder in the second degree, Rolon, 438 Mass. at 821, nor otherwise provide a cognizable basis for concluding that such a reduced verdict "would be more 'consonant with justice,'" Sanchez, 485 Mass. at 504, quoting Commonwealth v. Seit, 373 Mass. 83, 94 (1977).  Reducing the jury's verdict on these grounds was therefore an abuse of discretion.
      iii.  Disposition.  Ordinarily, upon discerning an abuse of discretion by a judge for considering impermissible factors in reducing a verdict, we would "remand to the judge for a reconsideration of [the] decision in light of our holding."  Pfeiffer, 492 Mass. at 455-456.  "This would provide the judge an opportunity to determine whether [any] remaining factors[,] . . . considered on their own[,] warrant a verdict reduction."  Id. at 456.  Here, however, the motion judge, like the trial judge, has now retired, so this course is not available to us.  While we could remand the matter to another Superior Court judge, we are "in as good a position as" a new motion judge to assess the records from the trial and motion hearing and make judgments of law.  Commonwealth v. Cousin, 478 Mass. 608, 615 (2018).  We therefore take it upon ourselves to decide whether any basis exists on which to affirm on alternate grounds the motion judge's decision to reduce the verdict.  See Pfeiffer, supra at 456, citing Commonwealth v. Andrade, 488 Mass. 522, 544-545 (2021).
      Upon careful review of the record, we conclude that the order reducing the verdict must be reversed.  As the motion judge acknowledged, the evidence that the defendant committed the predicate felony is "almost unassailable."  Moreover, this is not a felony-murder case where a different person committed the actual killing and the defendant's role was "on the remote outer fringes of a joint venture to commit some felony that satisfied the felony-murder rule in only some hypertechnical way," Rolon, 438 Mass. at 824, as we found to be the case in reducing the felony-murder sentence under § 33E in Brown, 477 Mass. at 824.  Here, by contrast, it is undisputed that the defendant himself committed the killing.
      The defendant argues that this court can affirm the reduction on the alternate ground that his sentence is constitutionally disproportionate to his culpability under the Eighth Amendment to the United States Constitution and art. 26 of the Massachusetts Declaration of Rights.  He cites in support his "vulnerable" status at the time of the stabbings; that he did not respond with instinctive violence until after he was "attacked" by the store employees; and that this court has, in the interests of justice, granted postconviction relief in cases similar to his.  We disagree.
      First, the defendant's status as, in his words, a "chronically homeless," "drug addicted" individual at the time of the stabbings is not sufficient alone to warrant reduction of the verdict.  A defendant's "personal circumstances may be considered in conjunction with [any] evidence that points to a lesser degree of guilt, but personal circumstances alone do not justify reduction of a verdict" (emphases added).  Rolon, 438 Mass. at 825.  See Commonwealth v. Brousseau, 421 Mass. 647, 655 n.7, 655-657 (1996).
      Second, as we stated in Rogers I, 459 Mass. at 260, "[g]enerally, . . . one who commits an armed robbery cannot assert a claim of self-defense."  See Commonwealth v. Vives, 447 Mass. 537, 544 n.6 (2006) ("The right to claim self-defense is forfeited by one who commits armed robbery").  The defendant nevertheless received a self-defense instruction for homicide at trial; the instruction "was proper" in all respects; and the jury rejected the defense.  Rogers I, supra at 261.  We do "not sit as a 'second jury.'"  Rolon, 438 Mass. at 821, quoting Keough, 385 Mass. at 321.
      Finally, the cases reducing felony-murder verdicts cited by the defendant are not on all fours with his own.  In Commonwealth v. White, 353 Mass. 409, 411-413 (1967), cert. denied, 391 U.S. 968 (1968), for example, the defendant was convicted of murder in the first degree for the death of a restaurant owner following a shootout between the two men.  The jury heard evidence consistent with two different theories:  that the defendant, armed with a gun, went to the restaurant to rob its owner (i.e., armed robbery) or, alternatively, to wait until the restaurant was empty, break into it, and empty the safe (i.e., breaking and entering).  Id. at 424.  The distinction between the predicate felonies was material; "[h]ad the jury found that the killing occurred during the commission of the crime of breaking and entering, a verdict of no more than murder in the second degree would have been warranted."  Id.  Because the trial judge had not instructed the jury on the distinction between the two crimes, we reduced the verdict to murder in the second degree to "prevent a possible miscarriage of justice."  Id. at 426.  See also, e.g., Commonwealth v. Rego, 360 Mass. 385, 393-397 (1971) (similarly reducing verdict to murder in second degree where substantial evidence supported that killing occurred during breaking and entering).  Here, however, there is no such uncertainty about the predicate felony; as discussed, the evidence was overwhelming that the defendant committed armed robbery, which was the only predicate felony on which the jury were instructed.  There was accordingly no similar risk of a miscarriage of justice.
      We thus discern no alternate basis on which to affirm the motion judge's decision to reduce the verdict on this record.  Nor is the defendant's sentence "so disproportionate to the crime that it shocks the conscience and offends fundamental notions of human dignity" in violation of the Eighth Amendment or art. 26.  Commonwealth v. Concepcion, 487 Mass. 77, 86, cert. denied, 142 S. Ct. 408 (2021), quoting Commonwealth v. LaPlante, 482 Mass. 399, 403 (2019).  We therefore reverse the order reducing the verdict.
      3.  Conclusion.  For the reasons set forth above, we affirm so much of the motion judge's order as denied the defendant's motion for a new trial.  We decline the Commonwealth's invitation to revisit our interpretation of rule 25 (b) (2) and instead reaffirm the authority of trial court judges to reduce a jury's verdict in appropriate cases even after a defendant's direct appeal.  We conclude, however, that the motion judge in this case abused his discretion in reducing the verdict to murder in the second degree and discern no alternate basis for such a reduction.  We therefore reverse the remainder of the motion judge's order allowing the defendant's rule 25 (b) (2) motion.
                                          
So ordered.
footnotes

          [1] We acknowledge the amicus brief submitted by the Antiracism and Community Lawyering Practicum at Boston University School of Law, Committee for Public Counsel Services, Criminal Justice Institute at Harvard Law School, Fred T. Korematsu Center for Law and Equality, Massachusetts Association of Criminal Defense Lawyers, New England Innocence Project, and ten evidence law scholars.
          [2] The conviction for armed robbery of Giambrone later was vacated, and the indictment dismissed.  See Rogers I, 459 Mass. at 251 n.3, citing Commonwealth v. Lopes, 455 Mass. 147, 148 (2009).
          [3] During his testimony, Rinn noted that Sneed had testified at trial that the defendant told her that one of the three employees called him a racial slur ("nigger") during the initial confrontation, and Rinn opined that this had placed the defendant in fear.
          [4] The defendant appealed from the new sentence to the Appellate Division of the Superior Court, which affirmed the sentence.  The defendant also filed a motion to revise and revoke his sentence for the assault and battery by means of a dangerous weapon, seeking a reduced sentence of from three and one-half to ten years.  The defendant then asked that the motion be held in abeyance until these appellate proceedings conclude.
          [5] We do not reach or express any view on either of these issues.
          [6] In drawing this contrast, the motion judge referred to "the intent to rob."  The specific intent required for armed robbery is, more precisely, the intent to steal.  Tevenal, 401 Mass. at 228 n.2.  See Duke, 489 Mass. at 658.
          [7] Contrary to the defendant's suggestion, note 6 in Rogers I, 459 Mass. at 253, did not itself "create[]" the due process claim he now presents.  The issue the defendant raises concerning the elements of armed robbery under the law at the time of the offense could have been raised in the trial court or on direct appeal, and, as discussed, the defendant's counsel did raise a similar argument in his direct appeal.
          [8] The shoplifting statute, G. L. c. 266, § 30A, has since been amended, and the threshold value is now $250.  St. 2018, c. 69, § 139.
          [9] Following oral argument, the defendant filed a supplemental memorandum concerning the United States Supreme Court's decision in Smith v. Arizona, 144 S. Ct. 1785 (2024).  Nothing in that opinion alters our conclusion that this issue is not new, and we therefore do not revisit the merits of the confrontation clause issue at this stage.  See Billingslea, 484 Mass. at 620-621.
               [10] We do not consider as rising to the level of appellate argument the defendant's one-sentence assertion in his reply brief that the jury's verdict should be further reduced to manslaughter as "more consonant with justice."  See Assessors of Boston v. Ogden Suffolk Downs, Inc., 398 Mass. 604, 608 n.3 (1986) ("Any issue raised for the first time in an appellant's reply brief comes too late, and we do not consider it").